MARY L. HORAHO *vs.* FELIX WANELIK *et al.*

APRIL 18, 1936.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

194

CONDON, J. This is an action of trespass for death by wrongful act. The action is brought under general laws 1923, chapter 333, sec. 14, by Mary L. Horaho, widow of Thomas J. Horaho, against Felix Wanelik and his wife, Sofia Wanelik, for causing the death of the said Thomas J. Horaho by assault and battery. The defendants filed three pleas, the general issue, self defense and defense of habitation, to the plaintiff's declaration. The case thereupon proceeded to trial before a justice of the superior court sitting with a jury. At the conclusion of the evidence, each defendant moved for the direction of a verdict, which motions were denied by the court and defendants' exceptions noted. The case was then given to the jury and they returned a verdict for the plaintiff against both defendants.

The defendants filed their motions for a new trial on the usual grounds. These motions, after hearing, were denied by the trial justice, and the defendants duly excepted to his rulings. On these exceptions, and on others taken during the course of the trial and amounting in all to thirty-one, the defendants have brought their bills of exceptions to this court. In their briefs defendants expressly waived exceptions 4, 5, 6, 7, 8, 11, 12, and 16, leaving twenty-three in number to be disposed of here. Several of these have for

convenience and brevity been briefed in groups, and we shall so consider them in this opinion.

The situation which presented itself to the trial court and the jury at the conclusion of the evidence was a strange one. If the plaintiff's evidence is credited, the deceased had gone to the kitchen door of the defendants' home at 54 Appleton street, in the city of Providence, on February 27, 1927, at about 10:45 p. m., as he had done on former occasions, for the purpose of buying a drink of beer and joining some friends who had preceded him into the house. When he sought admission by tapping the door with his foot or lightly kicking it, Mrs. Wanelik looked through a small window in the kitchen door and then called her huband to go out to him; Wanelik responded to his wife's call and went out and told Horaho that he, Wanelik, was not feeling well and he couldn't let him in; after a few words with Horaho, Wanelik returned to the house, and about five minutes later, he went out again but before doing so had some conversation in a foreign language with his wife, whereupon she handed him a club, telling him in English to take it, he might need it; Horaho was then clubbed by Wanelik and left lying near the gate of Wanelik's yard, where he was picked up by a police officer and brought to the police station; the next morning Horaho was sent to the Rhode Island Hospital, where he died from blows which he had received on his head from a club or other blunt instrument.

The defendants' testimony is a categorical denial of the plaintiff's evidence. They testified that they did not know Horaho; that he was not the man who came to their door on the night in question; that there was no club in their house and that there was no conversation in a foreign language between them when the defendant, Felix Wanelik, returned to the kitchen after he had talked to the man who came to the door. They could not identify this man who came to the door, but both were positive it was not Horaho. A witness for the defendants, Charles Jewett, who is a friend of theirs and who was present in the kitchen that

night, testified that Sofia Wanelik on that night did not hand a club to her husband, saying, in English: "Take this, you might need it," and that they did not converse in a foreign language after Felix Wanelik had returned to the kitchen. Jewett is contradicted by three witnesses for the plaintiff who were in the kitchen that night. Felix Wanelik also testified that he went out the second time because of two knocks on the door and saw a police officer on the steps, who asked him if he knew a man who was lying on the ground in Wanelik's yard, near the gate. He testified that he replied to the officer that he did not know the man, and he also testified that the man was not the same man with whom he had talked at the door when he went outside the first time. His testimony as to what the conversation was between him and officer Hearn with reference to the man lying in the yard is in direct contradiction of the testimony given by the officer. The testimony of Mrs. Wanelik that she did not hand a club to her husband just before he went out the second time is contrary to the positive testimony of three of the plaintiff's witnesses who were in the kitchen at the time.

On this state of the evidence the defendants moved for a directed verdict on the ground that there was no legal evidence to support the contention of the plaintiff that the deceased had been assaulted by Felix Wanelik. The denial of this motion by the trial justice furnished the basis of defendants' twenty-third exception. Defendants' counsel argue that there is little if any direct evidence presented by the plaintiff of such an assault, and that what little there is in the case is dubious. They also contend that the deceased admitted that Wanelik had not assaulted him when, in response to a question by officer Hearn as to whether Wanelik had hit him, he had answered "No."

Counsel for Sofia Wanelik further contends on behalf of his client that if there was an assault, there is no evidence sufficient in law to connect her with that assault. He urges that the words alleged to have been addressed by her to

Felix Wanelik at the time she is alleged to have handed him the club, to wit, "take this, you might need it," did not, on her part, authorize or sanction an assault. This conception of the law was stated in the defendants' request to so charge the jury; this request was denied by the trial justice and is the basis of the defendants' twenty-seventh exception and will be considered in connection with the refusal to direct a verdict for defendant Sofia Wanelik.

We shall consider the twenty-third exception with reference first to defendant Felix Wanelik. Counsel for Felix Wanelik contends that there is no direct testimony of a trustworthy nature that Wanelik assaulted the deceased. He dismisses the testimony of Adolf Mroz, who saw the altercation between the defendant Felix Wanelik and the deceased, as of doubtful value. The other evidence of the plaintiff is discounted as purely circumstantial. On the other hand, he relies strongly on the negative response of the deceased to the police officer when asked if Wanelik had hit him. Summing this all up, he urges that there was no legal evidence upon which the jury could reasonably find the defendant Felix Wanelik guilty of any assault. The vice of this argument is that it adopts the view of the evidence most favorable to the defendants whereas the rule of this court is that a motion for a directed verdict by a defendant should not be granted if, on any reasonable view of the testimony, the plaintiff can recover. *Saunders* v. *Kenyon*, 52 R. I. 221; *Reddington* v. *Getchell*, 40 R. I. 463. On such a motion the trial justice is required to view the evidence in the light most favorable to the plaintiff. *Riley* v. *Tsagarakis*, 50 R. I. 62.

In considering the testimony on such a motion, the trial justice is not at liberty to weight the evidence or pass upon the credibility of the witnesses, and should deny the motion, unless there is no legal evidence in the case which would justify a verdict for the plaintiff. *Pullan* v. *Townshend*, 54 R. I. 118; *Riley* v. *Tsagarakis, supra; Nahabedian* v. *United Electric Rys. Co.*, 50 R. I. 455. The defendants,

by a process of elimination of the plaintiff's evidence of the assault, in one instance by dismissing it as dubious, and in the other by discounting it as merely circumstantial, seek to show that there is no legal evidence left upon which a verdict for the plaintiff can be supported. Of course, such an argument is not consistent with the rule above stated. Clearly the trial justice would have invaded the province of the jury if he had thus found that there was no legal evidence which would support a verdict for the plaintiff. The plaintiff was entitled to the judgment of the jury on this evidence, including the circumstances surrounding the deceased at the time he gave a negative answer to the officer's question as to whether Wanelik had hit him. The jury might reasonably have concluded from the evidence that the deceased was in a daze, as a result of the blows which he had received, and did not understand the question asked him. We have reviewed the evidence and are of the opinion that it is conflicting. We do not think it can be fairly argued that there is no legal evidence of an assault. On the well established rules above mentioned, therefore, we find that the trial justice did nor err in denying the motion of defendant Felix Wanelik for a directed verdict.

Sofia Wanelik contends in support of her motion for a directed verdict that there was no sufficient legal evidence connecting her with an assault on the deceased and, further, that there was no evidence that Felix Wanelik committed a wrongful act. In connection with this exception, she also argues that the trial justice erred in not granting her request to charge as follows: "If you find that Mrs. Wanelik handed a club to Felix Wanelik and said 'take this, you might need it,' this evidence will not justify you in finding that she authorized or sanctioned an assault." This request was granted with the addition of the "alone" after the word "evidence." As these points are closely related and were briefed and argued together, they will be considered together here.

As we have held above, whether or not, on the evidence, Felix Wanelik had committed an assault was a question for the jury. If his act was justified on the ground of self defense or defense of his home, of course, in law there would be no actionable assault and therefore no wrongful act under the statute. If there were any legal evidence which supported either of these two defenses, it would be for the jury to say whether under all the evidence the defendant Felix Wanelik used more force than was necessary. The argument of Sofia Wanelik as to the effect of the testimony with reference to this question is without merit on a motion for a directed verdict, because the answer to the question would depend upon what view is taken by the jury of the credibility of the witnesses and the weight of the evidence.

A more difficult question is the one raised by the first ground, namely, that defendant Sofia Wanelik is not connected by legal evidence with the alleged assault. There is a clear conflict in the testimony as to whether she handed the club to her husband and at the same time uttered the words above quoted. If she did so speak and act, under these circumstances, was she a joint actor in the alleged assault? The answer to this question is governed largely by the evidence of the circumstances immediately preceding and following her handing the club to her husband. What did her husband say to her when he returned to the kitchen the first time after talking to the man who came to the door? What did she reply? The testimony of the plaintiff's witnesses is that this conversation was carried on in a foreign language. The defendants deny that they had any conversation in a foreign language. Did such a conversation take place? That was a question for the jury. If they found that it did, they would be warranted in inferring that it was denied by the Waneliks because it would be prejudicial to their defense. They would be further warranted in considering that inference in connection with Mrs. Wanelik's alleged remarks in English.

We think the trial justice did not err in refusing to give the jury, in the form requested, the charge requested by the defendant Sofia Wanelik, and in adding thereto the word "alone," as above indicated. She urges that the alleged remarks cannot be construed to authorize an illegal act and that they import protection rather than aggression. In support of her contention, this defendant cites a number of authorities in other jurisdictions. We have examined these authorities and they do not appear to us to present in any instance quite the same question as the case before us. In one of them there is language to the effect that, if the husband acted alone and independent of his wife, she would be liable if she knew and acquiesced in his acts without objection. *Mathews* v. *Livingston*, 85 A. (Conn.) 529. We have more than this in the instant case. According to the testimony against her, after her husband, at the request of Sofia Wanelik, had gone out to the man who was trying to get in and after the husband had returned and talked with her and had then gone out again, carrying the club which she had handed to him and urged him to take, several events, of evidentiary importance, occurred during the few minutes while he was outside. One of the witnesses asked her: "Well, what's the idea of him taking a club and looking like that?" and she said: "Well, he looks like that when he gets mad." The witness, being somewhat afraid, asked her to let him out and "she jumped in front of the door and held her both arms out, she said, 'Nobody is going to leave;'" and she told everybody to keep quiet and had the lights put out. From this evidence the jury would be justified in finding that when the wife knew that her husband was in a towering rage against a man outside, whom he might attack, she not only failed to restrain him but actually, without any suggestion from him, armed him with a murderous club. The trial justice was warranted by this testimony in submitting to the jury the question of her guilty participation in her husband's guilt, if the jury found him guilty of the assault and battery charged

by the plaintiff. Therefore, we find no error either in his denial of the request of Sofia Wanelik to charge as above stated or in his denial of her motion for a directed verdict. Defendants' twenty-third and twenty-seventh exceptions consequently must be overruled.

The defendants further contend that, because of errors committed at the trial by the trial justice, they were denied a fair and impartial trial before the jury. These alleged errors consist of statements made by the trial justice himself in the presence of the jury which defendants claim were prejudicial; statements of a like character made by the plaintiff's counsel; the admission in evidence of certain written statements of the defendants which they claim were inadmissible; the admission of certain testimony over the objections of defendants; and the refusal of several requests to charge and objectionable portions of the charge as given. These alleged errors furnish the basis for defendants' exceptions 1, 2, 3, 9, 10, 13, 14, 15, 17, 18, 19, 20, 21, 22, 24, 25, 26, 28, 29, and 30.

Exceptions 1, 2, 3, 9, 19, 20, 21, and 22, relate to the admission of testimony as to the manner in which entrance was gained to defendants' kitchen and as to whether the deceased had ever been there before, and as to whether or not beer was sold there. Some of the plaintiff's witnesses testified that they had frequented this kitchen with the deceased and had purchased beer there; that other men were there at times drinking and that it was the custom to tap on the door with one's foot to attract the attention of the defendants to the fact that admission was desired. The trial justice admitted this testimony in view of the defendants' plea of defense of habitation. He held it was competent for the plaintiff to show, if she could, that the deceased had been in Wanelik's home before and how he gained admission thereto, if there was any special manner in which such desire to gain admission was made known. He held that the jury was entitled to know the circumstances surrounding this assault because of the defenses pleaded by

the defendants. They contend that the only purpose of this whole line of testimony was to blacken their character and thus prejudice the jury against them. The defendants further contend that the court was clearly wrong in admitting such testimony because the only issue in the case was whether they had committed an assault and battery upon Horaho. They cite *Markey* v. *Angell*, 22 R. I. 343, to the point that evidence of good or bad character is not admissible in an action of assault and battery. We have no quarrel with that decision but it does not help the defendants here. In that case the defendants, over the objection of the plaintiff, introduced evidence of their peaceable character, and this court rightly said that the character of the defendants as peaceable men was not an issue in an action for assault and battery.

We do not agree with the defendants that the evidence objected to is character evidence. The tendency of that evidence is to show whether or not defendants' home, where the alleged assault and battery took place, was in reality and solely his home or a place of more or less common resort where men gathered for the purpose of drinking beer. Such evidence was relevant on the issue raised by the defendants' plea of defense of habitation because the jury was entitled to know the real character of the place which the defendants by their plea claimed to be defending at the time of the alleged assault. To come to the door of a man's home uninvited, in the nighttime, and kick it, demanding admission is one thing, but to seek admission in the same manner to a kitchen barroom and, according to a custom, as testified to by the plaintiff's witnesses, is quite another. In the first instance, the person seeking admission might justly be subjected to very drastic physical treatment while it would be by no means true that such treatment would be justified in the second instance.

The defendants' objection to this testimony and to the testimony of the sale of beer in the house as evidence of their bad character does not, therefore, appear to us as

sound. It is significant in this connection to note that the first reference to the fact that beer might be purchased in Wanelik's house was made by the defendants' counsel who cross-examined plaintiff's first witness, Albert J. Dionne, on that matter. It cannot be said then that the plaintiff did any harm to the defendants before the jury by further developing for a proper purpose what their counsel had first inquired into.

We think the jury was not prejudiced against the defendants because of the testimony of Felix Banahan to the effect that he had seen Horaho in Wanelik's place in February, 1927, and that he had also seen a club in the house during the same month. This testimony is objected to by defendants for the further reason that the trial justice permitted it in rebuttal after plaintiff's case had closed and after the defendants had put in their evidence. It was especially pertinent in view of the denial of the defendants that they ever had a club in the house, and it was within the discretion of the trial justice to admit it out of its regular order.

The testimony of Banahan as to Horaho's presence in the house several days previous to the assault and battery was also relevant in view of the testimony of the defendants that they had never seen Horaho before the night of the assault. The credibility of this witness was attacked in cross-examination and some of his testimony was shown to be untrue. Whether the whole of his testimony was subject to the same infirmity was for the jury to decide. The jury is not required to reject the whole of the testimony of a witness who is found to have testified falsely in some particular, even though it be material, but they may credit such of it as appears to them worthy of belief. *Commonwealth* v. *Wood*, 11 Gray 85; *Commonwealth* v. *Billings*, 97 Mass. 405. There was no error in the rulings of the trial justice and, therefore, all of defendants' exceptions above mentioned must be overruled.

The defendants object to certain statements of the trial justice, which we shall not set out here because of their length, made in the presence of the jury and which defendants claim were extremely prejudicial to a fair and impartial determination of the issue by the jury. These statements furnish the basis for defendants' seventeenth and eighteenth exceptions. We have considered defendants' contention in connection with other parts of the record at that particular stage of the trial and the most that can be said of the language of the trial justice is that it was not as restrained as it should have been. It was not, however, of such a serious nature as to justify us in holding it prejudicial and sending the case back for a new trial on that ground. Under the instructions as finally given to the jury to disregard any and all comments and statements, either by the court or counsel during the course of the trial, we think the error, if any, was cured. Exceptions seventeen and eighteen must therefore be overruled.

Defendants' tenth and fourteenth exceptions relate to statements of counsel for the plaintiff at the trial. These exceptions do not relate to any action of the trial justice, and, therefore, are not properly before us. Defendants should have first requested the court to instruct the jury to disregard the statements of plaintiff's counsel and, if the court refused to do so, an exception would lie to such refusal, thus properly raising the question here. This is the only manner in which a question based on alleged prejudicial remarks or statements of counsel made before the jury in the course of the trial or in argument can be raised for the consideration of this court. *State* v. *Farr*, 29 R. I. 72; *McNear, Inc.* v. *American & British Mfg. Co.*, 44 R. I. 190. In any event, the defendants have no cause to complain on this score, as they received all that they could have obtained if they had proceeded properly, by reason of the fact that the trial justice specifically charged the jury to disregard all statements of counsel not in accord with the testimony. Where the trial court does this, the exception

relating to the matter will be overruled. *McHugh* v. *Rhode Island Co.*, 29 R. I. 206. The above exceptions are therefore without merit and are overruled.

Defendants' thirteenth and fifteenth exceptions are without merit, as the trial justice granted their motion to strike out the testimony objected to, and, at their request, expressly charged the jury to disregard it and to erase it from their memory in the consideration of their verdict. The defendants cannot justly claim more than this unless the testimony objected to was so seriously prejudicial as to warrant a finding of a mistrial. Defendants did not make such a claim, and their exceptions must, therefore, be overruled.

The granting of certain of plaintiff's requests to charge, the denial of certain of defendants' requests to charge, and their objections to certain portions of the charge as given by the trial justice, furnish the basis for defendants' exceptions twenty-four to thirty, inclusive. Exception twenty-seven of this group relates only to defendant Sofia Wanelik and has been heretofore disposed of in this opinion. All other exceptions in the group relate to the defendants' contention that they were entitled to have the jury consider their special pleas of self-defense and defense of habitation which the trial justice in his charge expressly withdrew from the consideration of the jury. These exceptions will, therefore, be considered as one.

Defendants urge that it was error to withdraw these pleas even though they, the defendants, offered no evidence in support of them. They claim that the law entitled them to the judgment of the jury on the pleas based on a consideration of all the evidence in the case. The law undoubtedly is as stated in 5 C. J. §143, at page 696, which reads as follows: "It is also error to instruct on defenses pleaded, which are not supported by any evidence adduced at the trial, or as the rule is sometimes expressed, it is proper for the trial court to withdraw from the consideration of the jury any affirmative defense pleaded that is not sustained by any evidence; but, if the evidence of plaintiff will

support a reasonable conclusion of self-defense, that issue should be sent to the jury if it is raised by the answer, notwithstanding it may be without support in the evidence of defendant.''

The point of difference here between the trial justice and the defendants, however, is not what the law is, but what was the state of the evidence to which the law is applicable. The trial justice said in his charge, ''taking into consideration the plaintiff's evidence'' and because no proof of these pleas was offered by the defendants, there was no basis for charging the jury on them. In other words, he based his action not only upon the failure of the defendants to offer any proof of these defenses but also on the lack of any evidence in the plaintiff's case which might reasonably support them or from which a reasonable inference in support of them might be drawn.

From a careful reading of the transcript, we are of the opinion that his view of the evidence is that there was no legal evidence anywhere in the case upon which the jury could reasonably have found for the defendants on these pleas. Inasmuch as the defendants denied that the deceased was at their house that night, and that any assault was committed on him by either of them, the issues of self defense and defense of habitation, though raised by the defendants by their pleas, were not supported by their own sworn testimony, and this omission was not supplied by any evidence introduced on behalf of the plaintiff. Because of the total absence of any such evidence, the defendants were not entitled to any instruction thereon. The action of the trial justice was not erroneous and therefore all the above-mentioned exceptions must be overruled.

Now we come to defendants' thirty-first exception based on the denial by the trial justice of their motion for a new trial on the usual grounds and on the ground of newly discovered evidence since the trial, which latter ground was not pressed before us. After a hearing this motion was denied by the trial justice in a decision which appears in

the transcript. In this decision the trial justice carefully reviewed the salient points in the evidence and came to the conclusion that the jury was justified in reaching the verdict it did. Under our practice, where the evidence is conflicting, we will not disturb the findings of the trial justice unless they are clearly wrong. *Wilcox* v. *Rhode Island Co.*, 29 R. I. 292.

Where the facts are undisputed, the rule is different. *Lisker* v. *Emery*, 54 R. I. 190. Under such circumstances this court has said that it is as able to draw inferences therefrom as the trial justice, and in accordance with such rule will undertake. to weigh the testimony. *Stiness* v. *Brennan*, 51 R. I. 284. The defendants contend that we should do this in the instant case. We have carefully reviewed the evidence and we think the defendants' contention is without merit. There is the clearest and sharpest conflict running throughout the evidence from beginning to end. It was the duty of the jury to determine the issue. They have done so and the trial justice has approved their verdict. As we view the evidence, the jury was fully warranted in reaching the conclusion they did. Having seen the witnesses and heard them testify, they were better able to determine their credibility and to weigh the testimony than we are from a reading of the transcript. The trial justice, who had the same opportunity as the jury had in this respect, has accepted and approved their findings, and we think that justice does not require us to disturb them.

All the defendants' exceptions are overruled and the case is remitted to the superior court for the entry of judgment on the verdict.

*Edward F. McElroy, Peter W. McKiernan,* for plaintiff.

*McGovern & Slattery, James A. Higgins,* for defendant Felix Wanelik.

*Knauer & Fowler, Philip S. Knauer, Jr.,* for defendant Sofia Wanelik.