BUCK OWENS *et al. vs.* HAGENBECK-WALLACE SHOWS CO.

MAY 8, 1937.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

BAKER, J. This is an action of assumpsit in which the plaintiffs seek to recover damages for the alleged breach by the defendant of a written contract entered into by the

parties. The case was tried in the superior court to a jury, which returned a verdict for the plaintiffs for $4,500. The defendant filed in that court a motion for a new trial, which motion was granted by the trial justice, unless the plaintiffs should file a remittitur of so much of the verdict as was in excess of $4,000. The plaintiffs filed such remittitur, and the defendant then prosecuted to this court its bill of exceptions, containing exceptions to certain rulings made during the course of the trial, to the refusal of the trial justice to direct a verdict in its favor, to charge the jury as it requested and to grant unconditionally its motion for a new trial. Certain of these exceptions have been specifically waived by the defendant, and others, not briefed or argued, are deemed to have been waived by it. The remaining exceptions now to be considered fall into several groups and are so treated herein.

From the evidence it appears that the defendant corporation, which operated a circus, after correspondence and negotiations with the plaintiffs, who are husband and wife, agreed in writing at Peru, Indiana, on February 21, 1934, to employ them to carry out certain duties and present certain acts during the season of 1934 in connection with the showing of the circus, and especially in relation to that part known as the Wild West Concert, Mr. Owens being the owner of a trained or trick horse. The defendant started its season April 15, 1934, in Indiana, the plaintiffs traveling with the circus from place to place and taking part in the performance. The circus season that year ended approximately November 15.

While the defendant was holding its circus in Boston, Massachusetts, on June 30, 1934, it gave written notice to the plaintiffs that it would terminate its contract with them on July 14 next, the defendant claiming the right so to do by reason of a clause in the contract, which provided in substance that the plaintiffs should present their act to the entire satisfaction of the defendant. The circus was held in Fall River, Massachusetts, on the last-mentioned date, and

that night came to Providence in this state, where is was to hold a performance July 16. The defendant transported the plaintiffs to Providence from Fall River, and, while the circus was showing in Providence, the present suit was commenced.

The defendant's twelfth exception is to the refusal of the trial justice to declare a mistrial and take the case from the jury on the ground that they had been permitted to view the showing of a certain motion picture in which the plaintiff, Mr. Owens, and his trained horse had taken part. It is the contention of the plaintiffs that the showing of this picture was material and proper by way of answer to one of the pleas filed by the defendant. This plea, in substance, alleged that the contract, which was the basis of this action, was obtained from the defendant by the fraud and misrepresentation of the plaintiffs in connection, among other things, with their appearances in numerous moving pictures in which, the plaintiffs claimed, they and their horse had been featured.

In pressing the above exception, the defendant has attempted to have us pass upon the correctness of the ruling of the trial justice in permitting the jury to view this picture. This unusual procedure should be resorted to, if at all, with extreme caution. If for any reason it should ever become necessary and proper for a jury to view a moving picture during the course of a trial, it should be made to appear clearly to the trial justice that the picture was a true reproduction of the scene photographed and was properly authenticated according to the rules of evidence. Otherwise, because of the skill and development in the fabrication of moving pictures and the possibilities of producing desired effects by cutting and other devices, a jury might receive misleading and prejudicial impressions as to important issues in a case.

In the present proceeding, however, the record does not permit us to review the action of the trial justice which the defendant now complains of, because the record reveals

that, although the defendant argued against having the jury see the picture in question, the defendant took no exception to the ruling of the trial justice allowing them to do so. In fact, the defendant's attorney made the following statement among others when the matter was being discussed: ". . . I do not wish to deprive the jury of the opportunity of viewing a movie. . . . " Therefore, having failed to take an exception to the exhibition of the picture, the defendant cannot base his motion for a mistrial upon the sole ground that the picture was inadmissible in evidence. The defendant's twelfth exception to the trial justice's refusal to grant its motion to declare a mistrial is overruled.

Three of defendant's exceptions, taken at different times during the trial, were to the refusal of the trial justice to declare a mistrial on the ground that improper references had been made by Mr. Owens in his testimony to some possible business connection existing between the defendant and the Ringling Brothers and the Barnum & Bailey interests. The defendant's contention is that such references were prejudicial to it as tending to create sympathy for the plaintiffs with the jury. An examination of the transcript shows that the allusions in question were made while the witness was being examined concerning other issues and were of a somewhat vague and indefinite nature. The matter was not followed up or enlarged upon. One such occurrence took place while Mr. Owens was under cross-examination. While possibly the evidence brought out on these occasions was not material to the main questions before the jury, we fail to see that its introduction into the case by the witness was harmful to the defendant. In our judgment, the trial justice, in ruling as he did in these instances, did not, under the circumstances then existing, abuse the discretion vested in him. These exceptions of the defendant are therefore overruled.

The defendant's fifteenth exception is also without merit and is overruled. This exception is to the refusal of the trial justice to permit the defendant's attorney to ask in

direct examination a question of a witness for the defendant, the alleged object of which was to impeach certain testimony previously given by Mr. Owens. Assuming that the answer to the question in issue would have had such a result, which is by no means clear from the record, the point involved was immaterial, and the ruling of the trial justice was correct.

Several of defendant's exceptions are to the ruling of the trial justice in admitting in evidence certain exhibits offered by the plaintiffs. These exhibits are of a similar nature. Each one contains a cut or picture of Mr. Owens, some depicting him riding a horse, followed by a write-up or newspaper story setting out in laudatory language, different in each instance, his experience and capability as a rider, cowboy and actor in motion pictures. It appears from the evidence that these exhibits were taken from newspapers published in various parts of the country where the defendant showed its circus in the spring and summer of 1934, while the plaintiffs were in its employ, and were in the nature of advertising or publicity for the circus and its performers. The testimony reveals that the exhibits in question were given to Mr. Owens by the press representative or publicity man connected with this defendant, who attended to that type of work as it related to Mr. Owens, and the latter preserved them in a scrapbook he kept in the course of his business.

The defendant does not seriously object to the cuts and pictures, but contends that the write-ups, so-called, connected therewith are hearsay, and that it does not appear that the press representative in question had any authority to bind or act for the defendant in this connection. The evidence does not disclose definitely what person wrote or inserted in the newspapers in question the reading matter now under consideration. Mr. Owens testified, however, that he himself did not write it or have it published, and that the defendant had a press or publicity staff who wrote and inserted in the papers advertising of that kind, and

that the exhibits in question were put in the newspapers by the press staff of the defendant in following out the usual course of procedure in conducting the circus business. The defendant's manager testified in substance, prior to the admission in evidence, of the exhibits, that the press agent of the show went ahead to the places where performances were to be held and that it was his duty to have stories and other advertising material published in the newspapers of such places. Further, this witness in effect admitted that the publicity comprising plaintiffs' exhibit twenty-two was put out by the defendant.

A consideration of the transcript leads us to the conclusion that the exhibits in question were sufficiently connected with the defendant and were properly admitted in evidence. They were admissible, not necessarily to establish the truth of the statements they contained nor as admissions by an agent binding his principal, but to show the kind and type of advertising the defendant used in relation to the plaintiffs. No denial appears in the record that the defendant's press representative or publicity department inserted in the newspapers involved the cuts and reading matter making up such exhibits. The defendant's exceptions to the admission of the above exhibits are overruled.

The next group of exceptions taken by the defendant relates to certain other exhibits admitted by the trial justice. However, plaintiffs' exhibit nine is not in evidence, being marked for identification only, and the transcript shows no exception taken by the defendant at the time plaintiffs' exhibits twelve and fourteen were admitted, hence no question is before us relating to the introduction of these exhibits. Mr. Owens himself introduced in evidence exhibits six and seven. The first of these was a photograph of Mr. Owens riding a horse, and the other a photograph of Mr. Owens, his horse, and others who took part in the moving picture later viewed by the jury. Mr. Owens in his testimony described and identified these photographs, told

where they were taken, and gave evidence that they were correct representations of the scenes and persons which they purported to represent. While apparently these exhibits do not have a very close connection with any issue in the case, we cannot say that they are wholly immaterial or that their admission was prejudicial to the defendant.

Plaintiffs' exhibits eighteen and nineteen were pages from a circus publication issued in August 1934. One page contained, in an article concerning the defendant, a copy of a telegram sent by the defendant's manager to such publication, referring to Mr. Owens' alleged lack of drawing power in the circus concert. This telegram was sent as an answer to an article previously published about the defendant in the publication in question. The other page contained an advertisement in which the defendant stated that it desired to employ trick riders, Wild West performers and others for concert work. These items were identified by the defendant's manager, who also testified that his telegram to the publication was correctly reproduced. He himself characterized the telegram as a "white lie." While the remainder of the pages were immaterial, the defendant at the trial did not ask to have the matters above mentioned cut out or separated in any way. In our opinion, it was proper, under such circumstances, to admit these exhibits into evidence. Defendant's exceptions to the admission of plaintiffs' exhibits six, seven, eighteen and nineteen are overruled.

We have considered defendant's sixteenth and twenty-first exceptions, which are to certain statements and argument made by plaintiffs' attorney in the presence of the jury, and which defendant contends were prejudicial to it. These exceptions are not properly taken and do not raise any question for us to determine. The defendant did not request the trial justice to send the jury out, or to instruct the jury to disregard the remarks, or to declare a mistrial on the ground that such remarks tended to create a prejudice

against it. If the defendant had made any such request and the trial justice had refused to grant it, then an exception would lie to such ruling. *Horaho* v. *Wanelik,* 56 R. I. 193, 184 A. 323. The remarks in question occurred during the discussion of the admissibility of certain evidence and, in our judgment, even if properly before us, are not of such a character as could reasonably create any prejudice against the defendant.

The defendant's twenty-fourth exception is to a question permitted to be asked in cross-examination of a witness for defendant regarding the effect of adverse publicity on a performer. While publicity as an element of damage had been excluded from the case by the trial justice, his ruling in connection with the above question, if error, we deem to be harmless. Defendant's twenty-eighth exception is to the allowance of a question to Mrs. Owens concerning certain fines imposed by the defendant. Although the issue was rather immaterial, we cannot say that it did not have some bearing in relation to the construction of the contract involved herein as revealed by the conduct of the parties. Defendant's sixteenth, twenty-first, twenty-fourth and twenty-eighth exceptions are without merit and are overruled.

The contract, which is the subject of this suit, was executed by the parties at Peru, Indiana, the winter quarters of the defendant, whose permanent address, according to its letterhead, was Chicago, Illinois. The following appears at the beginning of the contract: "This agreement made at —— as of —— Sarasota, Fla.", and one of the clauses thereof reads: "10. The place of this contract, its status or forum is at all times Sarasota County, Florida. That in said county and State of Florida shall all matters whether sounding in contract or in tort relating to the validity, construction, interpretation and enforcement of this contract, be determined." Pursuant to its contention that the contract in question should be construed and interpreted by the law of Florida, the defendant offered in evidence, in

order to prove such law, the decision of the Supreme Court of Florida in *Hazen* v. *Cobb-Vaughan Motor Co.,* as reported in 96 Fla. page 151 (1928). See P. L. 1928, chap. 1161. The defendant sought to prove the law of Florida in order to show its application to the construction of the sixth clause of the contract: *viz.* "6. The artist shall at all times and places produce and present his act to the entire satisfaction of the show."

It becomes necessary, therefore, to determine by the law of what jurisdiction the contract before us is to be interpreted. This court, in *Hunt* v. *Jones,* 12 R. I. 265, citing with approval *Scudder* v. *Union National Bank,* 91 U. S. 406, adopted the rule that ordinarily the validity of a contract depends upon the law of the place where it is made. A contract, however, may be valid by the law of the place of its making or of its performance and yet fail practically if it is contrary to the public policy of the law of the forum. The court in the *Hunt* case applied this general rule not only to the validity, but also to the interpretation of a contract. We construe this opinion to hold that the contract is to be interpreted according to the law of the place where the parties, as an actual fact, made and executed the contract, and not that of another place arbitrarily selected by them and stated in the agreement incorrectly to be the place of its making. In the instant case, therefore, we find from the record that the contract before us was made in the state of Indiana.

No contention is made by the defendant that the questions now raised under this contract cannot properly be adjudicated in the courts of this state. It is urged by the defendant, however, that the parties have a right to select the law by which they desire to have their contract interpreted and its nature and obligation determined, and that certain parts of the contract herein, to which parts we have hereinbefore referred, particularly clause ten, in effect amount to an express agreement by the parties that the

contract be construed by the law of Florida, which agreement we should recognize. This court, in laying down the general rule that the interpretation of a contract should be according to the law of the place where it was made, referred in *Hunt* v. *Jones, supra,* by way of *dicta,* to the possibility that in certain instances the court might allow and enforce the presumed intent of the parties as applying either to the law of the jurisdiction where the contract is made or where it is to be performed, provided the contract is made in good faith. A similar thought is suggested by way of *dicta* in *Coderre* v. *Travelers Ins. Co.,* 48 R. I. 152.

The defendant contends, in substance, that the intent of the parties should govern, as it relates to the interpretation of the contract. This principle, it claims, has been broadly referred to and at times accepted in certain cases. An examination of such authorities, however, discloses that in nearly all instances the parties have expressed an intent, or the court has presumed an intent from the facts and circumstances, that either the law of the place of making or of the place of performance of the contract should be controlling. Assuming that the language used in the contract before us can be considered as expressing the intent of the parties that they desired to have the obligation of their contract construed by the law of Florida, as existing when the contract was made, in our judgment the right to have effect given to such an agreement is subject to limitations.

In reference to this subject the following appears in 6 Page, Law of Contracts, § 3571: "If this principle is to be used at all, it is therefore better to state it with the qualification that the law by which the parties elect to be bound must be the law of a jurisdiction which has some connection with the contract, by which form of expression is probably meant that the parties may elect between the different systems of law, which the court would consider as competing systems; but they can not elect the law of any other jurisdiction." A similar view is expressed by the author in 2

Beale, Conflict of Laws, 1081: "Another limitation frequently enforced by the courts is a limitation upon the breadth of choice of the parties. . . . The courts have, therefore, generally confined the parties in their choice of law either to the law of the place of making or to the law of the place of performance. In one or two cases, to be sure, the courts have gone further and allowed the law of some third state to be adopted, as for instance the state of residence of the promisor or the state of situs of the security. In general, however, this extension is not permitted, and the parties are confined rigidly to the law of the two places, that of making and that of performance." See also 2 Wharton, Conflict of Laws, (3d ed.) §§ 427 n., 427 o.

The limitations above referred to have been most frequently applied in cases involving questions of interest, usury, and commercial paper, in instances where the parties expressed an intent in relation to the law they wished to govern the transaction in which they were engaged. *Seeman* v. *Philadelphia Warehouse Co.*, 274 U. S. 403; *Brierley* v. *Commercial Credit Co.*, 43 F. (2d) 724; *Arnold* v. *Potter*, 22 Iowa 194; *United States Savings & Loan Co.* v. *Scott*, 98 Ky. 695; *Crawford* v. *Seattle, Renton & S. R. Co.*, 86 Wash. 628. In the case last cited, the court, at page 635, held: "It is well settled by the authorities that the parties to a contract may make the same with reference to the laws of any state or country and have their contractual rights governed thereby, provided only that such laws have a real and not a mere fictitious connection with the subject-matter of the transaction. It is enough to support this power to contract with reference to the laws of some particular state or country that some of the substantial elements of the contract have their situs in the state or country the laws of which the parties intend to control their rights under the contract. The intention of the parties in this respect may be evidenced by express words in the contract, or may be presumed from the facts and circumstances

attending the making of the contract. 9 Cyc. 665, 666; 2 Wharton, Conflict of Laws (3d ed.), §§ 510b, 510c."

The application of the general principle under discussion is further limited by certain other well-recognized exceptions. It is almost universally held that the parties, in exercising the power to select the jurisdiction whose law they intend to have control the obligations, rights and duties under their contract, must act in good faith and with no purpose of evasion or of avoiding some provision of the law of the place of making. *Andrews* v. *Pond,* 13 Pet. 65; *New York Life Ins. Co.* v. *Cravens,* 178 U. S. 389. It is also well settled that no stipulations of the parties as to the law they intend to have govern their contract will be given effect to, if it is considered to be contrary to the public policy of the law of the forum. *Hagenback* v. *Randall,* 75 Ind. App. 417. See *Winward* v. *Lincoln,* 23 R. I. 476.

We are of the opinion, therefore, that the right of parties to a contract to have their reciprocal duties and obligations under that contract governed by the law of some particular jurisdiction is limited to the selection or stipulation by them of the law of a jurisdiction which has a real relation to the contract. Applying this test to the situation appearing in the case at bar, we find nothing in the record herein which in any way properly connects the contract before us with the state of Florida. If it was the intention of the parties, as revealed by the language employed by them in the contract, to have the law of that state, as it was when the contract was made, control the interpretation of such contract, then that intention cannot be carried out and the law of Florida has no application to the contract herein.

Our opinion is that the contract in the present case is to be construed and interpreted by the law of Indiana, the place where the contract was made, where the defendant unquestionably had its winter quarters and where both parties were located at the time the contract was executed. As the law of that state was not proved as a fact, it is to

be presumed that the law, as it prevails there and governs the contract, is the same as the common law of this State on the subject. *O'Reilly* v. *N. Y., N. H. & H. R. R. Co.,* 16 R. I. 388; *O'Donnell* v. *Johnson,* 36 R. I. 308. The common law of Rhode Island applicable to the breach of a contract such as is involved in the case at bar, particularly in relation to the question of "satisfaction", is set out in *Hanaford* v. *Stevens & Co.,* 39 R. I. 182, *Miller* v. *Phillips,* 39 R. I. 416, and *Patry* v. *Berick,* 147 A. (R. I.) 877. Therefore, it was not error to exclude proof of the law of Florida which had no relation to this contract. The defendant's thirty-eighth exception is overruled.

The defendant, at the conclusion of the evidence, requested the trial justice to direct a verdict in its favor, and to his denial of this request took an exception. This point is largely controlled by our disposition of the previous exception. In pressing for a directed verdict, the defendant contended that the law of Florida, which it claimed governed the interpretation of the contract, permitted it to terminate the contract under the provisions of clause 6 thereof, provided only that the defendant acted in good faith in determining that the plaintiffs did not perform to its entire satisfaction. The defendant urged that the evidence showed without contradiction that it acted in good faith when it discharged the plaintiffs, and that therefore this was determinative of the case and that there was no issue of fact to submit to the jury. We have just decided, however, that the law of Florida has no application in the instant case. Further, in the letter of recommendation given the plaintiffs by the defendant on July 16, 1934, after their services terminated, (plaintiffs' exhibit five) it is stated, among other things, that their work had been entirely satisfactory. This letter and defendant's explanation thereof were for the jury to weigh and consider on the question of defendant's good faith. In our judgment, the evidence was conflicting on several material issues, and the

action of the trial justice in submitting these issues to the jury, and in refusing to direct a verdict for the defendant, was without error. The defendant's exception to his ruling in this connection is not sustained.

The defendant has also prosecuted an exception to the refusal of the trial justice to grant its request that he charge the jury concerning an alleged mutual agreement between the parties to cancel the contract sued on. The defendant claims that between June 30, 1934 and July 14, 1934 there was conversation between Mr. Owens and the manager of the defendant, which in effect amounted to an understanding between them that the contract be cancelled. In our opinion the testimony on this point entirely fails to sustain the defendant's contention, either directly or by any reasonable inference. As there was no evidence in the case to support its request to charge, the trial justice acted correctly in refusing to grant it. This exception is overruled.

The trial justice also refused to grant the defendant's eleventh request to charge, and it is prosecuting its exception to this ruling. This request related to the matter of damages which the defendant sought to limit to the amount of wages due the plaintiffs under the contract for the balance of its term, together with the $125 withheld from them, by having the jury directed to disregard all matters of the plaintiffs' earnings and expenses subsequent to July 14, 1934 for the remainder of the circus season. In our judgment the request in question was too broad and was rightly refused by the trial justice. There was evidence in the case which would reasonably entitle the plaintiffs to ask the jury to consider, as an element of damage, their loss in the matter of lodging and board, as well as other items, by reason of the termination of their employment. Further, the trial justice did charge, the defendant taking thereto no exception, as to the necessity of reasonable conduct on the part of the plaintiffs under the circumstances in attempting to mitigate damages. Finally, it is evident from the amount

of the verdict herein that the jury gave no undue consideration to the plaintiffs' claim that their expenses, in their endeavor to mitigate damages, amounted to over $6,000. We find that the failure by the trial justice to grant the defendant's eleventh request to charge did not prejudice the defendant. We therefore overrule the exception in question.

The defendant's last exceptions are to the refusal of the trial justice to grant unconditionally its motion for a new trial based on the usual grounds and on other grounds not pressed. The general rule regulating our duty in this situation is well established and well known. Citations of authority are unnecessary. In the ordinary case, where the evidence is conflicting, the decision of a trial justice on a motion for a new trial is entitled to great persuasive force in this court, and his findings will not be disturbed by us unless they are clearly wrong. In the instant case we have considered the testimony and the exhibits. On the material issues raised by the pleadings and supported by proof, the evidence was conflicting and presented issues of fact for the jury to determine in the first instance. In weighing the evidence and passing upon the credibility of the witnesses, the jury and the trial justice were doubtless assisted by having had the opportunity, not available to us, of seeing and hearing the witnesses as they testified. The verdict has been upheld as to the defendant's liability by the trial justice, who, however, reduced to some extent the amount awarded the plaintiffs. On the whole record, we do not find this action of the trial justice to be clearly erroneous. The exceptions of the defendant now under consideration are therefore overruled.

All of the defendant's exceptions are overruled and the case is remitted to the superior court for the entry of judgment on the verdict as reduced by the remittitur.

*McKiernan, McElroy & Going, John C. Going, J. Howard McGrath,* for plaintiffs.

*Adler & Flint, Walter Adler, Martin M. Zucker,* for defendant.