**MORETTI & PERLOW LAW OFFICES, Plaintiff,**

v.

**ALEET ASSOCIATES, Aleet Industries, Inc., Defendant.**

Civ. A. No. 87–0174 L.

United States District Court,
D. Rhode Island,
First Division.

Sept. 4, 1987.

William M. Walsh, Moretti & Perlow Law Offices, Cranston, R.I., for plaintiff.

Richard M. Kraver, Kraver and Parker, New York City, for defendant.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

This matter concerns the enforceability of a forum selection clause contained in a motor vehicle lease. This saga began on October 20, 1983, when the Moretti & Perlow Law Offices (Moretti & Perlow), a Rhode Island firm, entered into a motor vehicle lease with Inskip Leasing Ltd., a Rhode Island car dealership. This lease can best be described as a one page standard form document containing various terms and conditions on both its front and back sides. According to the lease Moretti & Perlow leased a 1984 Mercedes Benz 380 SLCR from Inskip in consideration of payments totalling approximately $40,000 over 46 months.

In addition to the substantive provisions, the front portion of the lease contained the following execution clause:

IN WITNESS WHEREOF, the parties have executed this lease the day and year set forth above.

Just beneath this clause spaces exist for both the lessor and lessee to execute the lease. In the space designated "LESSOR," the words "A–LEET LEASING CORP." are printed in bold face type. These words, however, have been x-ed out and are followed on the same line by the substituted designation, "Inskip Leasing, Ltd." Clearly this was a form supplied by Aleet.

The space entitled "LESSEE" is occupied by the designation "Moretti & Perlow Law Office." Appropriate representatives on behalf of the lessor and lessee executed the lease in spaces below those already mentioned. In the case of Moretti & Perlow

Law Office, the signatory was David C. Moretti.

The back side of the lease contains two clauses that are pertinent to the issues to be decided. They are in part as follows:

14. LEGAL MATTERS: THIS LEASE SHALL BE INTERPRETED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK AND REGARDLESS OF THE ORDERS IN WHICH THE SIGNATURES OF THE PARTIES ARE AFFIXED, IT SHALL BE DEEMED EXECUTED AT LESSOR'S PLACE OF BUSINESS DESIGNATED HEREIN AND IN THE COUNTY THEREOF, IN THE STATE OF NEW YORK; LESSEE AND ANY GUARANTOR HEREOF CONSENT TO THE JURISDICTION OF ANY STATE OR FEDERAL COURT LOCATED WITHIN THE STATE OF NEW YORK AND AGREE THAT ALL ACTIONS OR PROCEEDINGS ARISING, DIRECTLY OR INDIRECTLY, FROM THIS LEASE SHALL BE LITIGATED ONLY IN COURTS HAVING SUCH STATUS.

17. LESSOR'S ASSIGNMENT: LESSEE ACKNOWLEDGES LESSOR'S RIGHT TO ASSIGN THIS LEASE OR ANY OF ITS INTERESTS HEREIN, AND CONSENTS TO ANY SUCH ASSIGNMENTS.

On the same day that the parties executed the lease, Inskip exercised its rights under clause 17 and assigned its obligations under the lease to defendant Aleet Industries, Inc. (Aleet), a Delaware Corporation with its principal place of business in New York. Rentals and other sums payable by Moretti & Perlow were similarly assigned to a corporation located in the State of New York called Tilden Commercial Alliance, Inc. (Tilden). Notice of this assignment, dated October 29, 1983, was subsequently sent to Moretti & Perlow requesting the lessee to acknowledge receipt of the notice "by signing the enclosed copy of this letter and returning it to Tilden."

All appeared to go well with this arrangement until January of 1987. At that point in time, David C. Moretti (Moretti), a partner in the firm of Moretti & Perlow "became aware of the fact that the leased vehicle was not properly registered in the State of Rhode Island." As a result, Moretti filed a complaint in the Providence County Superior Court. In his complaint, Moretti alleged that Aleet had a duty under the lease to ensure that the vehicle was properly registered; Aleet had breached this duty; and that as a result, Moretti had lost the use of the vehicle and suffered other damages including having to purchase a new car.

In April of 1987, defendant removed plaintiff's action to this Court under 28 U.S.C. § 1441 and 28 U.S.C. § 1332(a), the latter statute giving this Court original jurisdiction where the matter in controversy exceeds $10,000 and is between citizens of different states. At approximately the same time, defendant also filed motions to dismiss this complaint under Fed.R.Civ.P. 12(b)(2), 12(b)(3), 12(b)(6), 17, and 56, or in the alternative to transfer this action to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1406(a).

Defendant's motions were heard on May 29, 1987. At that hearing, defendant only pressed its motion to transfer the case pursuant to § 1406(a). Given the unique factual circumstances surrounding this motion, the parties were given three additional weeks to submit supplementary memoranda. As to Aleet's other contentions, they were waived as a result of its failure to assert them.

While the matter was under advisement, plaintiff moved to file an amended complaint. The only purpose of this motion was to substitute Moretti & Perlow Law Offices as plaintiff in lieu of David C. Moretti. Plaintiff's motion to amend was, therefore, granted.

By the end of June, both parties had submitted their supplementary memoranda. After carefully considering these materials, along with the parties' original submissions and oral arguments, the Court is prepared to render a decision on the matter.

Two issues have been presented by the parties for decision in this case. First, whether state or federal common law gov-

erns the decision of this matter? Secondly, under the appropriate choice of law, whether the forum selection clause in question is enforceable?

▇ The first of these issues has already been decided by Judge Bruce Selya of this Court. In *D'Antuono v. CCH Computer Systems, Inc.*, 570 F.Supp. 708, 711 (D.R.I. 1983), plaintiff filed an action for breach of contract in the state superior court. Subsequently, defendant removed the action to this Court pursuant to 28 U.S.C. § 1441(a); jurisdiction was premised upon diversity of citizenship and the appropriate amount in controversy. *Id.* at 709. After the action was removed, the defendant moved to transfer venue to the United States District Court for the Southern District of California. This motion was premised upon a forum selection clause which provided that any action arising from the contract would be instituted in the Courts of San Diego County, California. *Id.* at 710. Prior to discussing whether such a clause was enforceable, the Court had to determine which rule (state or federal) was applicable in determining the enforceability of forum selection clauses. The Court held as follows:

Nor can it be doubted but that federal—rather than state—law must in the first instance be applied to venue selection.

This Court reaffirms the result reached in *D'Antuono.*

Plaintiff, however, contends that the doctrine of *Erie RR v. Tomkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) requires this Court to apply the law of the State of Rhode Island to the issue in dispute. In that case the Supreme Court indicated:

except in matters governed by the Federal Constitution or Acts of Congress, the law to be applied by any case is the law of the state ... *There is no federal general common law* ... *Id.* at 78, 58 S.Ct. at 822 (emphasis supplied)

The thrust of plaintiff's argument is that the issue to be decided is substantive in nature, and that, therefore, a federal district court sitting in diversity jurisdiction is bound, absent federal Constitutional or statutory mandates, to apply state law.

Plaintiff's reasoning is flawed for two reasons. First, it is now recognized that in certain narrowly defined but extremely important circumstances the federal courts may fashion "specialized federal common law"—substantive rules of decision not expressly authorized by the Constitution or any Acts of Congress—that supplant state law. C. Wright, A. Miller & E. Cooper, 19 FEDERAL PRACTICE AND PROCEDURE § 4514 (1982). This is the case where federal courts are called upon to fill in the interstices of a pervasively federal framework. *Id.* As the Court previously held in *D'Antuono*, 570 F.Supp. at 711, 28 U.S.C. § 1406(a) is the federal statute implicated in determining whether federal courts will give effect to forum selection clauses. On its face § 1406(a) does not state whether such clauses are enforceable. Nonetheless, § 1406(a) embraces such a rule because forum selection clauses impinge upon the power of federal courts to transfer cases from one district to another. In *LFC Lessors, Inc. v. Pacific Sewer Maintenance Corp.*, 739 F.2d 4, 6 (1st Cir. 1984) (quoting *Central Contracting Co. v. Maryland Casualty Co.*, 367 F.2d 341, 345 (3d Cir.1966)), the First Circuit stated such clauses, while not ousting the jurisdiction of the court, do constitute stipulations in which the parties join, asking the court to give effect to their agreement by declining to exercise its jurisdiction. Forum selection clauses, then, are merely privately bargained procedural rules adjunct to the operation of § 1406(a). As such, they are subject to a governing federal common law rule filling in the "interstices" of that statute.

Creation of a federal common law rule not only follows from the existence of § 1406(a) itself, but also from the need of a uniform rule in the area of venue selection. *D'Antuono*, 570 F.Supp. at 711. Were this Court to apply state law to the question in dispute, the result would be to "balkanize" the federal venue rules. *Taylor v. Titan Midwest Const. Corp.*, 474 F.Supp. 145 (N.D.Tex.1979). Cases containing identical forum selection clauses would be given different effect in the same district because

choice of law principles would require federal courts to determine which states' law were applicable to the clause in question. *Id.* at 147–148 n. 2. This result would defeat the parties general expectation that courts apply a single set of rules in determining the appropriate forum of adjudication.

Plaintiff's reasoning is also flawed because it assumes that Rhode Island courts have enunciated a rule which conflicts with the federal rule regarding forum selection federal clauses. Indeed, plaintiff contends that *Owens v. Hagenbeck-Wallace Shows Co.*, 58 R.I. 162, 192 A. 158 (1937) sets forth such a rule. *Owens*, however, is inapposite to the present case.

*Owens* solely concerned the issue of which state's law should govern the interpretation of the contract in dispute. With respect to this issue, the Rhode Island Supreme Court held that *choice of law* clauses, which require a contract to be governed by the law of a forum having no "real relation" to the contract, were not enforceable. 58 R.I. 162, 174, 192 A. 158. This holding rested upon the grounds that parties to a contract had a legitimate expectation that will be bound by rules which have some connection to the contract. *Id.* at 173, 192 A. 158.

The rule regarding the enforceability of *choice of law* provisions is premised upon different grounds than that regarding *forum selection* clauses. Originally, forum selection clauses were disfavored by many American courts because they were viewed as agreements whose object were to oust the jurisdiction of the courts, and thus, were contrary to public policy. *Bremen v. Zapata Offshore Co.*, 407 U.S. 1, 6, 92 S.Ct. 1907, 1911, 32 L.Ed.2d 513 (1972). Since *Bremen*, this reasoning has been completely renounced. Moreover, it simply has nothing to do with the policy underpinning the rule enunciated in *Owens*. Enforcing forum selection clauses does not defeat the expectation of a party to have the contract governed by a relevant set of rules; merely, the place of litigation is altered. The appointed forum can still apply the law which has some relation to the contract. The real relationship rule enunciated by

*Owen*, then, is not only inapplicable to the area of venue selection but also cannot serve as basis for a reasonable extension into that area. Without present state law contrary to the federal common law rule, it becomes unnecessary to apply the *Erie* doctrine to this case. Federal common law, then, governs the disposition of the issue before this Court.

The modern federal common law rule regarding venue selection was enunciated by the United States Supreme Court in *Bremen v. Zapata Offshore Co.*, 407 U.S. 1, 12, 16, 92 S.Ct. 1907, 1914, 1916, 32 L.Ed.2d 513 (1971). There, the Supreme Court held that absent compelling reasons such as fraud, undue influence, overweening bargaining power or unreasonableness, forum selection clauses should be given their full effect. There is no contention that the first two factors exist in the present case, thus making their further discussion superfluous.

With respect to overweening bargaining power, Moretti is an experienced Rhode Island attorney well-versed in the rudiments of contract law. If he did not read and understand the motor vehicle lease in question, he surely should have done so. It can hardly be argued, therefore, that clause 14 was inserted into the Motor Vehicle lease as a result of Inskip's unduly superior bargaining position.

Lastly, the *Bremen* Court held that a forum selection clause may not be enforced if it is unreasonable in nature. The Court explained that by the term "unreasonable," it meant that the "chosen forum was *seriously* inconvenient for the trial of the action." *Id.* at 16, 92 S.Ct. at 1916 (emphasis in the original). It then added the following further explanation:

> Of course where it can be said with reasonable assurance that at the time they entered the contract, the parties [to the agreement] contemplated the claimed inconvenience, it is difficult to see why any such claim of inconvenience should be heard to render the forum clause unenforceable.

*Id.*

■ Application of these definitions to the present case results in the following

two lines of reasoning validating the forum-selection clause in question. First, the geographical distance plaintiff would have to traverse to bring his suit in the State of New York rather than in the State of Rhode Island is not so far as to constitute a "serious inconvenience" It is at most some three hundred miles.

Secondly, even if this distance did constitute a serious inconvenience for plaintiff, it was contemplated by him when he entered into the motor vehicle lease in question for Moretti & Perlow. The execution clause of the lease contained the x-ed out words A-LEET LEASING CORP. in the space entitled "LESSOR." This should have given an experienced attorney such as Moretti reason to suspect the potential entrance of a third party (Aleet) into the original transaction. The content of clauses 17 and 14 make this event all the more foreseeable. Clause 17 provides lessor Inskip with the right to assign any of its "rights or interests" in the lease; clause 14 requires that any litigation relating to the agreement be brought in the State of New York. The lease, thus, clearly presents the danger that Inskip would assign its rights to a corporation having no relationship to the contract in question. The corporation, in turn, would seek to have any litigation arising from the lease brought in its home forum. This, of course, is precisely what happened.

That the events which transpired were foreseeable from the outset of Moretti's execution of the lease is supported by the manner in which this transaction was conducted. Inskip's assignment of its interests in the lease to Aleet occurred on the same day that the lease itself was signed by Moretti, October 20, 1983. Clearly, the assignment was part and parcel of the closing of the lease arrangement itself. The Court, then, can conclude with "reasonable assurance" that assignment of the lease to a corporation with its principal place of business in New York was contemplated by the parties when they entered into this transaction. From this conclusion, it follows that the claimed inconvenience of litigating claims arising from breach of the lease in New York was also contemplated by the parties on the day that they signed the lease in dispute.

That Moretti foresaw the potential for New York litigation is corroborated by yet a further set of facts. Moretti no doubt acknowledged the assignment of the lease by returning a copy of the notice of assignment to Tilden, within weeks of the initial transaction. He was required to do so by the notice of assignment. If Moretti did not acknowledge the assignment, there is no evidence that he ever objected to it. Indeed, all the evidence reveals that Moretti made monthly payments to Tilden in accordance with the assignment and terms of the lease. Moretti, thus, knew that any action he maintained under the lease might have to be brought against the assignees, Tilden or Aleet in New York, rather than against Inskip in Rhode Island. Since Moretti contemplated this possibility, one can conclude that Moretti will not be "seriously inconvenienced" if he is required to bring his action in the Southern District of New York. It follows under *Bremen*, that it is not "unreasonable" for this Court to give full effect to the forum selection clause contained in the parties' motor vehicle lease.

For all the above reasons, defendants' motion to transfer the case to the United States District Court for the Southern District of New York pursuant to § 1406(a) is granted.

*It is so Ordered.*