Robert L. BENSE, Plaintiff-Appellant,

v.

INTERSTATE BATTERY SYSTEM OF AMERICA, INC., Defendant-Appellee.

No. 932, Docket 81–7879.

United States Court of Appeals, Second Circuit.

Argued April 8, 1982.

Decided July 6, 1982.

Peter Banse, Rutland, Vt. (Keyser, Crowley, Banse, Abell & Facey, Rutland, Vt., of counsel), for plaintiff-appellant.

William F. Carroll, Dallas, Tex. (Coke & Coke, J. Michael Weston, W. Pruitt Ashworth, Crutsinger & Booth, John F. Booth, Sr., Dallas, Tex., Carroll, George, Hill & Pratt, Alan B. George, S. Scott Smith, Rutland, Vt., of counsel), for defendant-appellee.

Before TIMBERS, KEARSE and PIERCE, Circuit Judges.

PIERCE, Circuit Judge:

Plaintiff-appellant Robert L. Bense appeals from a final judgment entered on November 11, 1981, in the United States District Court for the District of Vermont dismissing his complaint for lack of proper venue.

Defendant-appellee Interstate Battery System of America, Inc. ("Interstate") is a Texas corporation with its main offices in Dallas County, Texas. Interstate markets automobile storage batteries through a network of franchised distributors in 48 states.[1] From on or about February 24, 1970, until about June 19, 1981, Bense was Interstate's distributor for the State of Vermont and certain portions of the State of New York.

According to the contract signed by the parties on February 24, 1970, (hereinafter "the agreement"), Interstate could terminate the agreement upon ninety days notice to Bense, provided there was a showing of "due cause." On or about March 19, 1981, Bense received written notice from Interstate that it was terminating the agreement, supposedly because Bense had failed to meet his sales quotas, and the agreement was terminated on or about June 19, 1981.

On July 7, 1981, Bense filed the complaint herein against Interstate alleging violations of section 1 of the Sherman Antitrust Act and section 3 of the Clayton Antitrust Act, 15 U.S.C. §§ 1, 13. Bense alleged that the reason that Interstate had terminated the agreement was that he had refused to participate in a price-fixing plan proposed by Interstate. On August 12, 1981, Interstate moved to dismiss the complaint pursuant to Rule 12(b)(3) of the Fed.R.Civ.P., on the ground that the agreement provided that any action arising from the agreement could be brought only in Dallas County, Texas, and that venue in the District of Vermont was therefore improper.

On October 27, 1981, Chief Judge Holden filed a memorandum decision granting the motion, and on November 11, 1981, a final judgment was entered dismissing the action. We affirm.

## DISCUSSION

Bense raises two issues on appeal: first, that the forum-selection clause of the agreement with Interstate is unenforceable as a matter of law; and second, in the alternative, that a choice-of-law provision in the agreement, which provides that the

---

1. Interstate does not manufacture batteries, but instead has them manufactured to its specifications by another company. The batteries are then sold under the Interstate label.

agreement is to be governed by Texas law, should be enforced to the extent that Texas law does not recognize contractual forum-selection clauses.

## I

The forum-selection clause of the agreement provides:

"[t]he exclusive venue of any suits or causes of action arising directly or indirectly from this AGREEMENT shall be in Dallas County, Texas."

In addressing the question of whether this clause is enforceable, we note at the outset that the action undoubtedly arises "directly or indirectly" from the agreement. Although the complaint was brought pursuant to federal antitrust law, the gist of Bense's claim is that Interstate wrongfully terminated the agreement, thereby damaging Bense.

The venue provision for cases brought under the federal antitrust statutes is set forth in section 12 of the Clayton Act, 15 U.S.C. § 22, which provides:

"Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found."

Obviously, pursuant to this section Bense could have brought this action in the federal district court for the district which embraces Dallas County, Texas, since Interstate's main offices are located there. However, Bense argues that the Congressional purpose underlying the broad venue provision of section 12 was to promote vigorous private enforcement of the antitrust laws, and he contends that this precludes enforcement of contractual forum-selection clauses. However, Bense has made no showing that his antitrust action could not be prosecuted as vigorously in Texas as in Vermont, nor has he demonstrated that the Congressional purpose would be subverted by enforcement of forum-selection clauses.

Bense cites no authority for the proposition that he could not waive by contract the Clayton Act's section 12 venue provision, and we are aware of none. At least two district courts have upheld such clauses: *Full-Sight Contact Lens Corp. v. Soft Lenses, Inc.*, 466 F.Supp. 71 (S.D.N.Y.1978); *A. C. Miller Concrete Products Corp. v. Quikset Vault Sales Corp.*, 309 F.Supp. 1094 (E.D.Pa.1970).

Analogously, the Supreme Court held in *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), that the liberal venue provisions set forth in section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, could be waived by contract. Alberto-Culver had sued Scherk in federal district court for violations of section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b). The contract between the parties provided that any dispute arising from the contract would be settled by arbitration to be conducted in Paris, France. The Court stated that

"[a]n agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute. The invalidation of such an agreement in the case before us would not only allow the respondent to repudiate its solemn promise but would, as well, reflect a 'parochial concept that all disputes must be resolved under our laws and in our courts....'" *Id.* at 519, 94 S.Ct. at 2457 (footnote omitted) (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9, 92 S.Ct. 1907, 1912, 32 L.Ed.2d 513 (1972)).

The *Scherk* Court held that the forum-selection clause provided in the contract must be enforced.

In reaching this conclusion, the *Scherk* Court relied heavily on *The Bremen v. Zapata Off-Shore Co., supra*, a landmark decision holding forum-selection clauses to be enforceable. At issue in *The Bremen* was the enforceability of a forum-selection clause in a maritime towage contract between an American plaintiff and a German defendant. The Court noted that

"[f]orum-selection clauses have historically not been favored by American courts. Many courts, federal and state, have declined to enforce such clauses on the ground that they were 'contrary to public policy,' or that their effect was to 'oust the jurisdiction' of the court. Although this view apparently still has considerable acceptance, other courts are tending to adopt a more hospitable attitude toward forum-selection clauses. This view, advanced in the well-reasoned dissenting opinion [from the circuit court's decision] in the instant case, is that such clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances. We believe this is the correct doctrine to be followed by federal district courts sitting in admiralty. It is merely the other side of the proposition recognized by this Court in *National Equipment Rental, Ltd. v. Szukhent*, 375 U.S. 311 [84 S.Ct. 411, 11 L.Ed.2d 354] (1964), holding that in federal courts a party may validly consent to be sued in a jurisdiction where he cannot be found for service of process through contractual designation of an 'agent' for receipt of process in that jurisdiction.... The choice of [the] forum [in the present case] was made in an arm's-length negotiation by experienced and sophisticated businessmen, and absent some compelling and countervailing reason it should be honored by the parties and enforced by the courts." *Id.* at 9–12, 92 S.Ct. at 1912–14 (footnotes omitted).

The Court held in *The Bremen* that "[t]he correct approach [in this case] would have been to enforce the forum clause specifically unless [plaintiff] could clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id.* at 15, 92 S.Ct. at 1916.

Bense argues that *The Bremen* only applies to cases brought under federal admiralty jurisdiction. This position lacks merit in light of the *Scherk* Court's adoption of and reliance upon *The Bremen* in a case

that involved federal jurisdiction other than admiralty. Furthermore, although *Scherk* and *The Bremen* both arose in an international context, we see no reason why this should preclude the application of *The Bremen* Court's reasoning to domestic suits. This position is bolstered by *The Bremen* Court's statement that the enforcement of forum-selection clauses is simply "the other side of the proposition recognized" in *National Equipment Rental v. Szukhent, supra*, a case which involved no international question.

Addressing the question of the enforceability of forum-selection clauses, Judge Learned Hand said over thirty years ago that

"be the original reasons good or bad, courts have for long looked with strong disfavor upon contracts by which a party surrenders resort to any forum which was lawfully open to him.... In truth, I do not believe that, today at least, there is an absolute taboo against such contracts at all; in the words of the Restatement, they are invalid only when unreasonable.... What remains of the doctrine is apparently no more than a general hostility, which can be overcome, but which nevertheless does persist." *Krenger v. Pennsylvania R. Co.*, 174 F.2d 556, 560–61 (2d Cir.) (L. Hand, Ch.J., concurring) (footnotes omitted), *cert. denied*, 338 U.S. 866, 70 S.Ct. 140, 94 L.Ed. 531 (1949).

In our view, any such "general hostility" towards forum-selection clauses is today simply a vestigial remainder of an outmoded doctrine. Several lower courts have adopted the reasoning of *The Bremen* in cases unrelated to either admiralty or international law. *See, e.g., In re Fireman's Fund Insurance Cos.*, 588 F.2d 93 (5th Cir. 1979); *Taylor v. Titan Midwest Construction Corp.*, 474 F.Supp. 145 (N.D.Tex. 1979); *Full-Sight Contact Lens Corp. v. Soft Lenses, Inc., supra*. In short, we find a sufficient basis to hold that contractual forum-selection clauses will be enforced unless it clearly can be shown that enforcement "would be unreasonable and unjust,

or that the clause was invalid for such reasons as fraud or overreaching." Bense has failed to make any such showing. As the district court noted, the contract consists of two easily readable pages; the forum-selection clause in the contract is not in fine print or hidden in a mass of unrelated verbiage; and, as the district judge stated, Bense "is not a wholly unsophisticated business person." The forum-selection clause was part of the bargain into which he freely entered.

Furthermore, as Judge Holden found,

"Bense has shown no difficulties in bringing this suit in Texas other than the inconvenience and expense of travelling.... [M]ajor witnesses would most likely be defendant's employees who are all located in Texas. These facts clearly do not show that trial in the contractual forum will be so gravely difficult that plaintiff will be denied his day in court (citation omitted), nor that enforcement of the clause will be so unjust as to allow the plaintiff to escape the term to which he agreed."

We agree.

Bense's reliance on *Indussa Corp. v. S.S. Ramberg*, 377 F.2d 200 (2d Cir. 1967), and *Krenger v. Pennsylvania R. Co., supra*, is misplaced. Both of these decisions predate the Supreme Court's decision in *The Bremen*. Further, *Krenger* involved a post-injury agreement limiting the injured party's choice of venue. The consideration given by the railroad to the injured employee for the agreement was money so that he might live. The statute under which the suit was brought, the Federal Employers' Liability Act, specifically forbade giving effect to any agreement the purpose of which was to limit liability and the Court held that this included liability to be sued in the forum of plaintiff's choice. The antitrust acts contain no comparable provision.

Similarly, *Indussa* involved the Carriage of Goods By Sea Act (COGSA), section 3(8) of which provided that " 'any clause, covenant, or agreement in a contract of carriage * * * lessening [the carrier's liability for negligence, fault, or dereliction of statutory duties] otherwise than as provided in this Act, shall be null and void and of no effect.' " 377 F.2d at 203. The Court further stated that "to require an American plaintiff to assert his claim only in a distant court lessens the liability of the carrier quite substantially...." *Id.* Again, no comparable situation exists in the present case.

II

◼ In his second argument, Bense relies upon a choice-of-law provision in the agreement which reads:

"[t]his AGREEMENT is to be governed by and construed according to the laws of the State of Texas."

Bense contends that this provision requires the application of Texas venue law, which he maintains disfavors forum-selection clauses. We do not agree that Texas venue law is applicable, since it is clear that the interpretation of the choice-of-law provision urged by Bense could not have been the intention of the parties. Bense's interpretation would render the forum selection clause meaningless, and would thus frustrate the purpose of the parties as it is clearly set forth in the agreement. "Courts have long insisted that contracts may not be interpreted ... so as to frustrate and distort the intentions of the parties." *Mailer v. RKO Teleradio Pictures*, 332 F.2d 747, 749 (2d Cir. 1964). We therefore decline to interpret the agreement as urged by the appellant.

The judgment of the district court is affirmed.