**FIRST INTERSTATE LEASING SERVICE, A DIVISION OF FIRST INTERSTATE CREDIT ALLIANCE, INC., Plaintiff,**

v.

**Ann SAGGE d/b/a M.L.C. Vendor, Defendant.**

**No. 88 Civ. 0716 (PKL).**

United States District Court, S.D. New York.

Oct. 17, 1988.

William M. Stein, Hood & Stein, Haverstraw, N.Y., for plaintiff.

Joseph E. Canciamilla, Groff & Johnson, Antioch, Cal., Martin Freedhan, New York City, for defendant.

## OPINION AND ORDER

LEISURE, District Judge.

Plaintiff in this case, First Interstate Leasing Service ("First Interstate"), is a New York corporation which purchases and rents vending equipment. Lessees typically operate the equipment for their own business purposes. Defendant, Ann Sagge ("Sagge"), is an individual residing in California. Sagge has done business as "M.L. C. Vendor." Plaintiff instituted this action to collect on an alleged default of a lease executed between it and defendant.

Sagge sought to engage in vending business activities and in that regard approached the Cornelius Company, a supplier of vending machines. She initially negotiated for the purchase of 15 vending machines, but subsequently decided to finance the equipment instead of purchasing it outright. She was advised by the Cornelius Company that she could lease the equipment through plaintiff, which would act as an independent financier. Affidavit of Galen S. LeMar, sworn to on July 12, 1988 ("LeMar Affidavit"), ¶ 4.

First Interstate requested and obtained credit information on defendant from the Cornelius Company. Plaintiff then prepared a form Lease and Delivery/Installation Certificate for the vending machines. *See* Exhibits A ("Lease") and B ("Certificate"), Attached to LeMar Affidavit. The lease and certificate were executed by Sagge and forwarded to plaintiff. Defendant arranged for the delivery of the machines with the branch manager of plaintiff's Oregon office, Galen S. LeMar. LeMar Affidavit ¶ 1. The entire transaction was strictly commercial, and was in no sense a consumer transaction. LeMar Affidavit ¶ 3.

After receipt of the lease by plaintiff, defendant obtained possession of the vending machines. Complaint ¶ 5. Later in 1986, defendant delivered the machines to one Ronald Allen who, according to Sagge, agreed to make all payments pursuant to the Lease. Points and Authorities in Support of Motion to Change Venue ("Points in Support"), at p. 4. Apparently, Mr. Allen subsequently failed to make those payments. In 1987, defendant received a formal notice from First Interstate regarding the default in payment. *Id.* Upon continued nonpayment, plaintiff filed suit in the Southern District of New York to recover for the payments due under the lease. Plaintiff also claims late charges, sales tax, collection costs and attorney's fees. Complaint ¶ 7.

Defendant moved under 28 U.S.C. § 1404(a) to transfer venue. That provision states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of this section is "to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense....'" *Van Dusen v. Barrack*, 376 U.S. 612, 614, 84 S.Ct. 805, 808, 11 L.Ed.2d 945 (1964) (quoting *Continental Grain Co. v. Barge FBL–585*, 364 U.S. 19, 26–7, 80 S.Ct. 1470, 1474–75, 4 L.Ed.2d 1540 (1960)). Defendant cites the following reasons in support of her request to transfer venue: financial hardship in defending this action in New York and in having to travel cross country, inconvenience of potential witnesses who reside in California and Oregon, inconvenience of transferring records which are located in California and Oregon, and a proposed cross action against Ronald Allen which will be brought in California. Points in Support at 7–9.

Plaintiff First Interstate asserts that the lease entered into by the parties contained a clause consenting to jurisdiction and venue in the Southern District of New York. The forum selection clause reads as follows: "[the] parties and any guarantors do hereby agree to the venue and jurisdiction of any court in the State and County of New York regarding any matter arising [under this contract]". Lease ¶ 19. Plaintiff contends that in the present commercial context this clause is controlling, and that such clauses must be enforced in the absence of extenuating circumstances. Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Transfer ("Memorandum in Opposition"), at p. 4. Plaintiff cites as authority a series of unpublished opinions. The law with respect to this issue is clear, however, and for the following reasons the Court denies the motion to transfer.

*The Forum Selection Clause*

In *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), the Supreme Court was asked to decide whether or not to enforce a forum selection clause in a commercial drilling rig contract. The clause provided that any dispute would be litigated in an English court. The Court held that forum selection clauses should be enforced "absent a strong showing that [the clause] should be set aside." *Id.* at 15, 92 S.Ct. at 1916. "The correct approach [is] to enforce [the] forum clause specifically unless [a party opposing its enforcement can] clearly show that enforcement would be [1] unreasonable and unjust, or [2] that the clause was invalid for such reasons as fraud or overreaching." [1] *Id.* The "unreasonable and unjust" standard can be satisfied by a showing that a forum selection clause, al-

though freely bargained for, is "seriously inconvenient" to one of the parties. *Id.* at 16, 92 S.Ct. at 1916. The Supreme Court recently commented on its approach in *The Bremen* when it stated: "[F]orum-selection clause[s], which represent[ ] the parties' agreement as to the most proper forum, should receive ... the consideration for which Congress provided in § 1404(a)." *Stewart Organization, Inc. v. Ricoh Corp.*, —— U.S. ——, 108 S.Ct. 2239, 2241–42, 101 L.Ed.2d 22 (1988). The question, then, is whether the hardships urged by defendant require transfer of the case given all of the factors involved, including the forum selection clause.[2]

The Second Circuit has commented on the practical effects of *The Bremen* and forum selection clauses on various occasions. In *AVC Nederland B.V. v. Atrium Investment Partnership*, 740 F.2d 148, 156 (2d Cir.1984), Judge Friendly wrote "[t]here can be nothing 'unreasonable and unjust' in enforcing such an agreement; what would be unreasonable and unjust would be to allow one of the [parties] to disregard it." *See also, Luce v. Edelstein*, 802 F.2d 49, 57 (2d Cir.1986) (clause upheld where party attempting to avoid selection clause did not "offer any reason for us not to enforce" the clause).[3]

A cursory review of relevant case law indicates that the clause in the present case should be enforced. *Bense v. Interstate Battery System of America*, 683 F.2d 718, 720 (2d Cir.1982) involved the enforcement of a forum selection clause which provided that "the exclusive venue of any suits or causes of action arising directly or indirectly from this AGREEMENT shall be in Dallas County, Texas." This clause was in a franchise agreement between Interstate, a supplier of automobile storage batteries,

---

**1.** Defendant fails to allege that the clause is invalid and there is no independent evidence of invalidity. The second prong of the *Bremen* test is not in issue here.

**2.** Defendant does not directly address the forum selection clause in her moving papers; she merely asserts the difficulties mentioned above in support of the motion to transfer.

**3.** Although many forum-selection cases, such as *Bremen* and *AVC Nederland*, occur in interna-

tional situations, their reasoning is equally applicable to domestic cases. Even though a case may arise " 'in an international context, we see no reason why this should preclude the application of the *The Bremen* Court's reasoning to domestic suits.' " *Luce v. Edelstein*, 802 F.2d at 57 n. 6 (quoting *Bense v. Interstate Battery System of America, Inc.*, 683 F.2d 718, 721 (2d Cir.1982)).

and one of its distributors. *Id.* at 719. The franchisee brought suit against Interstate under the Sherman and Clayton Acts for wrongful termination of the franchise agreement, allegedly because of the franchisee's refusal to participate in a price-fixing plan. The action was commenced in the District of Vermont, and Interstate moved to transfer venue to Texas pursuant to the contract clause. *Id.* The Court held that the clause was enforceable in part because "the contract consists of two easily readable pages; the forum-selection clause ... is not in fine print or hidden in a mass of unrelated verbiage; and ... the [movant] is not a wholly unsophisticated business person." There, as here, the clause was "part of the bargain into which [the parties] freely entered." *Id.* at 722. *See also, Mercury Coal and Coke v. Mannesmann Pipe and Steel,* 696 F.2d 315, 318 (4th Cir.1982) (forum selection clause is not invalid merely because of unequal bargaining power where both parties are business people or because one party fails to read the contract before signing). The *Bense* Court also stated that inconvenience and expense of traveling were not, in and of themselves, adequate reasons not to enforce such a clause. *Bense,* 683 F.2d at 722.

*Moretti & Perlow Law Offices v. Aleet Associates,* 668 F.Supp. 103, 104 (D.R.I. 1987) involved a lease with a forum-selection clause which stated that all legal disputes would be adjudicated in a New York federal court. The court held that inconvenience in having to defend the action in New York was not reason to invalidate the clause. Even if the traveling were a serious inconvenience, it was contemplated by the parties when entering into the contract. *Id.* at 107. *See also, Ronar, Inc. v. Wallace,* 649 F.Supp. 310, 313 (S.D.N.Y.1986) (inconvenience would not prevent enforcement of clause, and was forseeable); *Leasing Service Corp. v. Graham,* 646 F.Supp. 1410, 1414–15 (S.D.N.Y.1986) (inconvenience not sufficient to refuse to enforce a forum selection clause, since businessman acting in a commercial setting is expected to understand the consequences of signing a lease); *Credit Alliance Corp. v. David*

*O. Crump Sand & Fill,* 470 F.Supp. 489, 493 (S.D.N.Y.1979) (assumption that businesspeople can read a simple and unambiguous contract).

In *Credit Alliance Corporation v. B & P Excavating, Inc.,* 80 Civ. 2649–CSH (S.D. N.Y. March 2, 1981) (slip op. available on Lexis, Genfed—Courts file), the forum selection clause contained language identical to the wording of the clause in the instant case. The parties to the contract were assumed to understand the consequences of their acts; furthermore, parties in a commercial context should have been able to read and understand the simple contract. *Id.* at 3.

This is not to say, of course, that inconvenience can never rise to a level sufficient to render the forum selection clause "unjust" and unenforceable, or that other interests of justice will never require transfer in the face of a contrary selection clause. For example, in *Savin v. CSX Corp.,* 657 F.Supp. 1210, 1213 (S.D.N.Y. 1987), a complex securities class action, the suit was transferred despite the applicable provisions of a forum selection clause. In that case, unlike the present, multiple related litigations had been proceeding for nearly a decade in the district to which the movant was attempting to transfer the case. The contemplated cross-claim against a third party in this case does not create an issue of justice sufficient to invalidate the contract clause. Defendant here has not met its "burden ... to establish that there should be a change of forum." *Factors Etc., Inc. v. Pro Arts, Inc.* 579 F.2d 215, 218 (2d Cir.1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979).

In light of the authorities discussed above, it is apparent that the motion to transfer venue must be denied. Defendant's claims of inconvenience and financial hardship do not rise to a level of serious inconvenience that would require transfer. The clause and its consequent inconveniences were known by the parties and freely contracted for. As in *Bense,* this contract is only two pages long and is very

748

legible. The clause is not hidden, but is in fact highlighted in bold type.

Travel and its accompanying inconvenience and expense, while undoubtedly legitimate hardships, are not adequate reasons to transfer venue to California in contravention of the agreed-upon contract clause. Defendant was acting in a business capacity when she made the contract; it must be assumed that she was sufficiently sophisticated to understand a simple lease agreement and to forsee its consequences. She entered into the agreement voluntarily, and the forum selection clause was a part of that bargain.

The forum selection clause is fully enforceable. There is no occasion to further address defendant's allegations of hardship. *See Credit Alliance Corp. v. B & P Excavating,* slip op. at 4. Although defendant's difficulties are apparent, they do not create "interests of justice" sufficient to transfer the case in contravention of the forum selection clause. Defendant's motion to transfer venue is denied. Counsel for the parties are ordered to appear in Courtroom 36 for a pre-trial conference on December 16, 1988 at 3:00 p.m.

SO ORDERED.