[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISS
The plaintiff, Total Telecommunications, Inc. (Total) is a corporation located in Connecticut which provides telephone service to consumers throughout the New England States. The defendant Target Telecommunications, Inc. (Target) is a New Jersey corporation. Target was engaged in reselling ATT Software Defined Network Long Distance service to consumers through local resellers of such long distance service such as Total.
On July 29, 1991, Total and Target entered into an agreement called a "Dealer Commission Agreement" (dealer agreement).
Target in the agreement represented that it was the holder of an ATT Software Defined Network and could provide ATT long distance service at a discount. Total signed the dealer agreement and had its customers in turn sign "Software Defined Network Customer Service Agreements" with Target.
The dealer agreement between Total and Target contains the following language at paragraph 2.8.
 "8. Disagreement and all questions as to its interpretations, performance and enforcement and the rights and remedies of the parties hereunder shall be determined in accordance with the laws of the State of New Jersey. Should any provision contained in this agreement violate the laws of any State in which this Agreement be performed, that provision contained herein. Parties mutually and knowingly agree that any suit arising out of or relating to this agreement shall be CT Page 2835 filed and adjudicated by a court in Passaic County, State of New Jersey."
The second to last sentence, at least to the court, is somewhat unclear but this does not affect the issue before the court or the obvious intent of the contract provision. It should also be noted that Total had its customers sign a "Software Defined Network Customer Service Agreement with Target." This document at paragraph 5 reads in relevant part:
 "The Agreement shall be governed by and construed in accordance with the substantive and procedural laws and practices of the State of New Jersey. Venue of any action or suit under this Agreement shall be in any court serving Passaic County, New Jersey, and customers shall be subject to the personal jurisdiction of the State of New Jersey . . ."
The basis of this suit lies in the fact that Target allegedly lost its ability to provide ATT long distance service. Target according to the complaint did not inform Total or Total's customers of this but shifted the service to a different company. In trying to implement the switch Target, either through its own acts or omissions or those of the defendant Southern New England Telephone Company (SNET), failed to connect a large number of Total's customers to any long distance service and Total lost the great majority of those customers. Many other customers of Total upon learning ATT would not be providing the long distance service terminated their contracts with Total. The plaintiff has brought this action for damages allegedly resulting from these occurrences.
The defendant company Target has now filed this motion to dismiss requesting this court to decline to exercise further jurisdiction in this matter in light of the above referenced paragraph 2.8 of the Dealer Agreement which, if enforced, would require the plaintiff to bring its action in a court located in Passaic County, New Jersey.
Is the contract provision which purports to require that disputes that arise under the agreement be litigated in the New Jersey courts a provision that should be recognized by this court? CT Page 2836
The cases are collected in a thorough article "Jurisdiction — Contractual Restrictions", 31 ALR 4th 395 where the law is summed up in this area (at least from the author's perspective) at page 409:
 "Under this more modern view, the courts treat the contractual provision not as one which seeks to oust the court of jurisdiction, but rather as a provision which will allow the court to decline jurisdiction if it is reasonable to do so. Where no additional expense is created, the witnesses are available at either location, the party will not lose his [sic] remedy, and the provision was freely bargained for, the courts have declined jurisdiction and enforced the contract. . . . On the other hand, where the party seeking to avoid the clause has satisfied his [sic] burden of proof and shown that enforcement of the clause will cause undue hardship or has not been freely bargained for, the courts have refused to enforce it. . . ."
In other words, the old rubric that "every presumption must be indulged which favors the jurisdiction of the court",Brewster v. Brewster, 152 Conn. 222, 233 (1964), really misses the point. The question really is whether a contract provision should be enforced. The leading case is Bremen, et al. v. ZapataOffshore Co., 407 U.S. 1 (1972). Of course, parties have a right to contract as to the forum where disputes are to be held, and surely courts have jurisdiction to interpret such contract provisions and their effect. In Bremen, the Supreme Court reversed the district court which held that the forum-selection clause was unenforceable and posed the question as follows: "No one seriously contends in this case that the forum-selection `ousted' the District Court of jurisdiction over Zapata's action. The threshold question is whether that court should have exercised its jurisdiction to do more than give effect to the legitimate expectations of the parties, manifested in their freely negotiated agreement by specifically enforcing the forum clause." No Connecticut Appellate level case has directly dealt with this issue.
In United States Trust Co. v. Bohart, 197 Conn. 34 (1985) CT Page 2837 the court addressed the issue of whether the trial court properly exercised personal jurisdiction over Texas beneficiaries of a trust created by Connecticut residents. Id. p. 35. Ancillary to dealing with the due process considerations raised by that question the court noted that the trust contained language to the effect that the trust would be administered pursuant to Connecticut law and that an accounting action would be litigated in Connecticut. The court then went on to say, "Absent a showing of fraud or overreaching such forum clauses will be enforced by the courts." The court then went on to refer to Burger KingCorporation v. Rudzewicz, 471 U.S. 462, 478 (1985) which itself referred to language in Bremen at 407 U.S. page 18. At that page the Bremen court, referring to the enforceability of forum clauses in contracts and not with due process issues raised by. attempts to secure personal jurisdiction, said the following:
 ". . . [I]t should be incumbent on the party seeking to escape his [sic] contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he [sic] will for all practical purposes be deprived of his [sic] day in court. Absent that, there is no basis for concluding that it would be unfair, unjust or unreasonable to hold that party to his [sic] bargain."
Bremen, et al. v. Zapata Off-Shore Co., 407 U.S. at page 18.
From all this it can be deduced that our appellate courts will follow the so-called "modern view" toward these forum clauses in contracts reflected in the previously set forth quotation from 31 ALR 4th at 409.
Before examining the forum clause in this case and whether because of it this court should decline to exercise jurisdiction it would also be useful to know and therefore be guided by the purposes sought to be achieved by having these clauses in contracts in the first place.
As noted in Bremen where international contracts are involved, it is advantageous to parties that a "neutral" forum be selected to deal with disputes. The same is true in contract situations where both sides understand that contractual arrangements will lead to business dealings in numerous states. Much uncertainty and inconvenience to both sides can arise if a CT Page 2838 suit could be maintained in any jurisdiction where a dispute might occur in the far ranging business universe that the contract contemplates. Cf. Bremen 407 U.S. at pp. 12-14
How should the court determine whether the forum selection clause should be enforced in this case and whether this matter should be dismissed? A reading of the cases seems to suggest that this involves what is in effect a two-step analysis.
First, the court must look to contract formation. Was the clause the product of fraud or deception? Was the bargaining power of the parties so out of balance that such a clause should not be enforced?
Secondly, the court must determine whether, even if no fraud or deception were involved, would the inconvenience resulting to the party bringing suit be so great if it had to go to another forum to prosecute its action, that the court should not enforce an otherwise valid contractual provision.
(a)
There can be no claim here that the inclusion of the forum selection clause in this agreement was the result of fraud or deception based on where it is located in the contract or how it is printed.
The forum selection clause is not hidden or buried within the agreement. It is the second to last paragraph above the signature lines on the third page of the contract. The paragraph is of ordinary type size. The last paragraph in bold faced type contains an acknowledgment that the "DEALER ACKNOWLEDGES THAT ITHAS READ THIS AGREEMENT, UNDERSTANDS IT, AND AGREES TO BE BOUNDBY ITS TERMS AND CONDITIONS", See TUC Electronics Inc. v. EagleTelephonics Inc., 698 F. Sup. 35, 40 (DC Conn. 1988), cf GeneraleBank, N.Y. Branch v. Wassel, 779 F. Sup. 310, 314 (SD N.Y. 1991),Bense v. Interstate Battery Systems of America, 683 F.2d 718, 722
(CA 2.19.82), cf Colonial Leasing Co. V. Pugh Bris Garage,735 F.2d 380, (CA 9.19.84) where in refusing to enforce forum selection clause court noted it was not specifically bargained over and the clause "was contained in a form contract in fine print at the bottom of a page", id page 382.
Other considerations examined by the courts are whether the forum selection clause was bargained over, who prepared the CT Page 2839 agreement in which the clause is included, and the relative bargaining power of the parties.
The contract was drawn up by Target and no evidence was presented that the forum selection clause was specifically bargained over but the talismanic cry of contract of adhesion and the consequences that are supposed to flow from that invocation should not permit people to avoid the legal consequences of their signatures without more. In Duhane Fabrics Intern. Inc. V. M.V.Hreljin, 600 F. Sup. 202, 203 (SDNY 1985), the court noted that in the Second Circuit district courts "have consistently found that it is not unreasonable to enforce a choice of forum provision embodied in a standard printed form." There must be something more to show overreaching. Mr. O'Connor who signed the contract for Total was the president of his company. He had been in business as a general manager of car dealerships for twenty years in four states. His company had a franchise agreement similar to the one it entered into with Target at the time he entered into the agreement with Target. Target was selling the service of a powerful, international company, AT T, but Target itself was no behemoth with a sophisticated legal staff that can be said to have overwhelmed Total and Mr. O'Connor. Target like Total, was itself a small company see TUC Electronics Inc. VEagle Telephonics Inc., 698 F. Supp. At page 40, Bense v.Interstate Battery, supra at 683 F.2d 722, Titan Midwest Constr.Corp, 474 F. Sup. 145, 148 (ND Tex. 1979), Volkswagenwerk A.G.v. Klippan, 611 F.2d 498, 504 (Alaska, 1980). This is not a case like Couch v. First Guaranty Ltd, 578 F. Sup. 331 (1984) (ND Tex) where a defendant California finance corporation sought to enforce a forum selection clause against a plaintiff seeking to build a truck stop and motel where the court describes the plaintiff as "a carpenter from Plainview, Texas. Temporarily disabled by an injury . . . With no financial resources of his own . . . (who) sought financing assistance from defendant after reading an advertisement", id. Page 332. The court also found the plaintiff lacked any knowledge of the venue provision which "was obscured in the middle of a paragraph", id. Page 334.
It is true that Mr. O'Connor was presented with a contract drawn up by Target and it was presented on a take it or leave it basis. One court used these two factors to conclude it would not enforce the forum selection clause, Flanagan v. State of Arizona,313 F. Sup. 664, 670 (SD Texas, 1970), but noted that the facts cited were not so strong as those cited in a commentary to the Restatement of (Second) Conflict of Laws which noted such forum CT Page 2840 selection clauses are often buried in fine print. Flanagan did note, however, and seemed to place great weight on the fact that the "defendant was the dominant party" (Emphasis added) id. Page 670. What does "dominant party" mean in this context? It has no readily apparent abstract meaning. It must relate to the business context the parties find themselves in when they negotiated their agreement. Because the contract was drawn up by Target and presented on a "take it or leave it" basis, does this suggest that Total was somehow pressured into accepting it or that overreaching occurred? As noted Mr. O'Connor was not an unsophisticated person with little or no business experience. There was no evidence presented that Total was in dire financial straits without access to counsel and that Target took advantage of those known circumstances. Mr. O'Connor testified he was not even sure whether other companies could have offered him the same product as Target, he did not try to seek them out, he just wanted to do business with Target. Mr. O'Connor's testimony in fact indicates he did have access to a lawyer and although he was told that Target would not change any contract provisions, he was not told that unless he signed immediately Target's offer would be withdrawn. In the context of contract formation in this case Target cannot be said to be such a "dominant party" that the forum selection clause should not be enforced.
It is against this just referred to factual background that the claim must be analyzed that the forum selection clause was not specifically bargained over or discussed. Mr. O'Connor said he read the contract but didn't pay attention to any provisions other than the commission percentages; at one point he said this was so because he never thought there would be a problem. Under the circumstances of this case, however, a party should not so easily be permitted to avoid the legal impact of its signature based on a claim the clause was not specifically bargained over. It was simply negligent not to have read the provisions of this relatively short, easily understandable contract. Pimpenello v.Swift Co., 170 N.E. 530, 531 (NY 1930). The court in Generale Bank,New York branch v. Wassel, supra at 779 F. Supp. Page 315:
 "While Wassel concedes that the forum selection clause was on the same page as his signature, he claims that the clause was `adhesive' because `he had no knowledge of the actual nature of the waiver and was misled as to the contents of the documents'. . . However, this argument is CT Page 2841 circular, and fails to demonstrate that Wassel was unable to understand the documents he was signing or excused from inquiring into their meaning. The clause was written in plain English and printed directly above Wassel's signature. Wassel was obligated to read the forum selection clause and he is conclusively bound by his signature on this document."
The observations of Judge Liesure in Generale Bank are applicable to this case. Also see LFC Lessors Inc. V. Pearson,585 F. Sup. 1362, 1364-1365 (D Mass. 1984) for good discussion, Also see First Interstate Leasing Service v. Sagge, 697 F. Sup. 744,746 (SDNY 1988).
The plaintiff Total also makes reference to other terms of the contract to argue that in general the contract was a product of overreaching and overweening bargaining power. Total argues in its brief that "the entire remedy scheme of the Dealership Agreement is illusory — In paragraph 6 for example, the Dealership Agreement provides that Target `shall in no event be liable to Dealer for damages of any kind resulting from any cause whatsoever, including but not limited to termination of this agreement . . . (emphasis added) (pp 9-10 of brief). Oddly enough, however, Total did not feel constrained by this language from suing Target for a breach of the agreement. The contract language on this score is somewhat confusing in any event. In paragraph 8, it says "Disagreement and all questions as to its interpretations, performance, and enforcement and the rights andremedies of the parties" shall be governed by New Jersey law. . . . any suit arising out or relating to this agreement shall be filed and adjudicated "by a New Jersey Court. Paragraph 9 states "This Agreement shall be binding and enured [sic] to the benefit of the legal representatives, successors, heirs and assigns of the parties and if any should be subject to the Terms and Conditions of this Agreement . . ." The contract language, read as a whole did not deal with illusory rights. It contemplated rights and claims might arise but that if so they had to be litigated in New Jersey Courts.
On the question of consideration and whether any purported agreement was illusory, the court would note that this is a franchise or dealer agreement. Target had control of a product Total wanted to sell to consumers through independent CT Page 2842 contractors. The real consideration or benefit of the agreement to Total was the commission it could earn by selling the product to customers it was able to procure in the New England area. Present claims that overreaching was involved here are belied by Mr. O'Connor's testimony. At page 32, he testified that he was told it was a nonnegotiable contract and when asked whether that was "totally acceptable", answered "Yes." Mr. Chamberlain was the representative of Target when the contract was signed. At page 40 of the hearing transcript, Mr. O'Connor said he sat down and discussed things with Mr. Chamberlain. Total had already a dealer agreement with a company referred to a Metro. In this regard, the following then occurred:
 "Mr. Green: Were the terms given you by Target different than those that you had had from Metro?
 Mr. O'Connor: Oh, yes.
Mr. Green: More favorable I take it?
Mr. O'Connor: Absolutely. Yes."
Total hired independent contractors who sold the long distance service and these independent contractors were provided agreements, prepared by Target, that customers were to sign. This "system" was explained to Mr. O'Connor (T. p. 14). Interestingly, the agreement that the customer signed for Total's independent contractors had the same forum selection clause as the dealership agreement between Total and Target that Total now sues on. All of this does not have the flavor of over-weaning bargaining power or deceptive practice which resulted in the formation of an illusory contract.
In any event it is probably not appropriate to try to defeat the operation of a forum selection clause by alleging a general defect in the inducement of the contract. One court has said:
 "A party may not, however, avoid the effect of a forum clause by merely alleging fraud or coercion in the inducement of the contract at issue. Rather, the party must show that "the inclusion of that clause in the contract was the product of fraud or coercion." Scarce v. Alberto-Culver Co, 417 U.S. 506, 519 n. 14, 94 S.C. 2449, 2457 n. 14, 41 L.Ed.2d 270
CT Page 2843 (1974) (emphasis in the original). See also Ritchie v. Caravel Corp., 714 F. Sup. 700, 703 (SDNY 1989) ("A forum selection clause is to be enforced except where the clause itself
is procured by fraud (emphasis in original). Here, Defendant merely alleges that he was induced to purchase the limited partnership interests on the basis of fraud and coercion and that his relationship with Colonial was characterized by unequal bargaining power. He does not state that the forum selection clause itself was made a part of the contract by means of fraud or overreaching. Thus, Defendant has failed to show that the forum selection clause is unenforceable as "unreasonable under the circumstances."
 AI Credit Corp. V. Liebman, 791 F. Sup. 427, 430 (SDNY 1992).
Finally, the court should note that the plaintiff Total relies on the case of Galli v. Travelhost, Inc., 603 F. Sup. 1200
(D Nevada, 1985).
From the perspective of the facts of this case the court disagrees with the approach of the court in Galli. It is based on localism and ignores the thrust of cases like Bremen which accept the notion that we live in a national economy that conducts business across state lines. The Galli court at page 1264 said: "This court reads Zapata (the Bremen case) to mean in its effect, that a forum selection clause appearing in a contract should not be regarded with quite the same reverence as is typically given to contractual clauses."
But trial courts do not often have the resources necessary to the task nor the right to remake contracts or moderate their effect when they are not between businesses and consumers but between businesses of fairly equal bargaining power, where there is no evidence of fraud or deception and no explicit public policy issue, established by precedent, is involved. Besides, this is not Nevada but Connecticut; we are in the same geographical area as the Second Circuit. That Circuit takes a very different view than the district judge in Nevada and strongly favors enforcement of forum selection clauses. Weiss v.Columbia Pictures Television, Inc., 801 F. Sup. 1276, 1278 (SD CT Page 2844 N.Y. 1992). Also see, Bense v. Interstate Battery Sys. ofAmerica, where the court said:
 ". . . contractual forum — selection clauses will be enforced unless it clearly can be shown that enforcement `would be unreasonable and unjust or that the clause is otherwise invalid for such reasons as fraud or overreaching.'" (Emphasis added by this court), 683 F.2d at pp 721-722
This court cannot conclude that the forum selection clause here was the product of fraud or deception or of such disparity of bargaining power that the process of contract formation was tainted so as to preclude enforcement of this clause.[1]
(b.)
But that does not end the inquiry since the question must still be addressed as to whether enforcement of such a clause would be so inconvenient that it would be unfair to grant the motion to dismiss based on that clause and require the plaintiff to seek relief in a different state. Judge Liesure in Weiss v.Columbia Pictures Television, Inc., supra, at 801 F. Supp. page 1278 said: ". . . once a mandatory choice of forum clause is deemed valid, the burden shifts to the plaintiff to demonstrate exceptional facts explaining why he (sic) should be relieved from his (sic) contractual duty." This is in accord with the reasoning of Bremen. See 407 U.S. at page 15.
The courts have considered various factors in deciding this question.
The selected forum, New Jersey, does bear a reasonable relationship to the dispute. The contract was signed there and the defendant Target is located in New Jersey. Taylor v. TitanMidwest Const. Corp., supra at 474 F. Supp., page 149.
Mere inconvenience and expense of travel are not, standing alone, adequate reasons to disturb the operation of a forum selection clause. Bense v. Interstate Battery, supra 683 F.2d page 722; First Interstate Leasing Service v. Sagge, supra at 697 F. Supp., page 747; Weiss v. Columbia Pictures Television, Inc.,
supra at 801 F. Supp., page 1279. In any event, no serous inconvenience from a geographical point of view is involved. The CT Page 2845 forum selection clause dictates suit must be brought in Passaic County, New Jersey. Passaic is closer to this courthouse than portions of eastern Connecticut. We are not dealing with great distances. Passaic is less than 100 miles from the plaintiff's business. Both are located in a metropolitan area well served by convenient means of transportation. This is not, for example, a case like Galli v. Travelhost, 603 F. Sup. 1260, 1262 (D.Nev. 1985) where a national corporation sought to change the venue of litigation to Texas, where its headquarters were located, and thus require the individual plaintiffs, who reside in Nevada, to pursue their action hundreds of miles from their residence.
It has been repeatedly held that the "inconvenience" necessary to persuade a court to decline to enforce a forum selection clause that has been found to be valid must be serious inconvenience, such inconvenience as would effectively deprive a plaintiff such as Total of a forum in which to pursue its claim against Target. The added expense and time of litigating in the selected forum falls far short of meeting that standard, LFCLessors v. Pearson, 585 F. Sup. 1362, 1365 (ND Ill., 1984)Midwest Mech Contr. V. Tampa Constructors Inc., 659 F. Sup. 526,531 (W.D.Mo., 1980).
One court said that while it recognized the hardship that would be imposed on a party forced to litigate in a foreign country because of a forum selection clause the alternative of using depositions provided adequate opportunity for the litigant to have its "fair day in court", Sun World Lines LTD v. MarchShipping Corp., 801 F.2d 1066, 1068 (CA8, 1986), Elia Corp. V.Paul N. Howard Co., 391 A.2d 214, 216 (Del., 1978) (depositions could be used), Smith, Valantino Smith Co. v. Superior Court ofLA Cty, 551 P.2d 1206, 1209 (Cal. 1976), In Weiss v. ColumbiaPictures Television, 801 F. Sup. 1276 (S.D.N.Y., 1992) the court noted in upholding a forum selection clause that among other factors the "plaintiff has failed to demonstrate why the presentation of the testimony of any of his witnesses by deposition would be inadequate", id. at p. 1279). In a case bearing some analogy to the one now before the court the plaintiff in arguing that convenience militated against enforcing such a clause because it had "the added burden of presenting customer witnesses . . . the only `effective' way of describing the problems experienced by its customers would be to present live testimony". The plaintiff went on to note in arguing before an Illinois District Court that it would be highly unlikely that these witnesses would voluntarily appear in a California court" CT Page 2846 (California being the forum selected for litigation under the contract), Norman Sec Systems v. Monitor Dynamics, 740 F. Sup. 1364,1369 (ND Ill. 1990). The court noted in response to this argument:
 "Although the testimony may not be as effective, the testimony of customers can be presented through depositions, perhaps even video depositions. Moreover, the court cannot rely on Norman's conclusory statements that it is `highly unlikely' that these witnesses would refuse to voluntarily appear," id p. 1369.
No reason has been presented here why deposition testimony could not be presented in a New Jersey court.
Nor does this appear to be a case and certainly no evidence was offered at the hearing held in this matter that certain physical evidence or even crucial documents necessary to litigate this matter are located in Connecticut so that a full and fair trial could not be held in New Jersey. Norman Sec. Systems at p. 1369, cf Weiss v. Columbia Pictures Television at801 F. Supp. at p. 1279.
It is true in addition to witnesses that officers and employees of Total would have to travel to New Jersey if they chose to present live testimony if the forum selection clause is enforced. The courts do not put much weight on this argument since if the clause is avoided Target officers and employees will have to travel to Connecticut, cf Full Sight Contact Lens v. SoftLenses Inc. 466 F. Sup. 71, 73 (SDNY, 1978, Dick Procter ImportsInc. V. Sumitomo Corp., supra at 486 F. Supp. p. 818, Weiss v.Columbia Pictures Television, supra 801 F. Supp. At p. 1279, JackWinter v. Koration Company, et al, 326 F. Sup. 121, 126 (fn. 6).
In the just cited footnote in the Jack Winter case the court referred to factors which should be taken into account when inconvenience is presented as a reason to avoid forum selection clauses. The court noted "since Koration's patent involved in this action has been granted to licensees all over the country, it is not unreasonable for them to seek and to have sought, to have claims arising out of the use of this patent litigated in one place — namely their principal place of business." Nor the court might add would it be unreasonable, for a company operating CT Page 2847 in this business context, to want that uniformity which can be achieved by having one jurisdiction deciding disputes arising under its contractual arrangements. The exact same considerations apply here and to what appears to be the nature of this industry. Target is a New Jersey Corporation. Total is a Connecticut corporation that had just left a contractual relationship with a New York corporation to enter into a dealership agreement with Target and once that agreement was signed, quickly entered into agreements on behalf of Target and through independent contractors in several New England States.
One consideration involved in this case has presented great difficulty for the court. The second and fourth count are based on the dealership agreement and a claimed violation of that agreement. The third count makes a CUTPA claim. The court would have no difficulty in granting the motion to dismiss if the complaint contained only those counts. The first count however, alleges negligence. It alleges that Target was negligent and its negligence in switching long distance service from ATT to Wiltel resulted in Total customers losing their long distance service. It also claims that the Southern New England Telephone Company (SNET) was negligent in that it failed to properly switch Total's customers to a long distance carrier or follow up and ensure these customers in fact had not lost their long distance service. The Total complaint goes on to allege that as a result of the negligence of both defendants its customers were left with no long distance service and therefore terminated their relationship with Total.
If the first count (negligence) and the second count (breach of contract) are read closely it would appear that two separate categories of loss are claimed to result from each theory of liability. The negligence alleged in the first count is said to have caused Total customers to lose their long distance service and that loss of service allegedly resulted in those customers terminating their relationship with Target. The breach of contract count alleges that when some Total customers learned their long distance service was switched from ATT to another company in breach of the contract Target had with Total, these customers terminated their relationship with Total. In other words, this category of customers are not alleged to have lost their long distance service as such as did the customers in the first count who were allegedly the ultimate victims of the negligence of Target and SNET. CT Page 2848
Based on the complaint, counsel for Total argues it would be "seriously inconvenient" for his client if the forum selection clause were to be enforced and suit had to be initiated in New Jersey against Target. There would be two separate suits making the same negligence allegation in two different jurisdictions. Target in a New Jersey court might take the position that SNET's negligence caused the loss to Total and it was not negligent in any way; SNET might take the opposite position in the Connecticut suit claiming it was not negligent but any loss was caused by the negligence of Target.
To support this position, the plaintiff presented an affidavit prepared by Mr. Connor. At a hearing on the motion to dismiss besides argument no evidence was presented to support or further define the negligence allegations against either Target or SNET except for this affidavit. In the affidavit presented by Mr. Connor he states that Target did in fact switch the long distance service of Total's customers but "[i]n attempting to implement the `switch', Target through its own conduct or through its conduct in conjunction with acts or omissions by Southern New England Telephone Company, failed to connect large numbers of plaintiff's customers to any long distance service." As a result, Mr. Connor says his company lost many customers. That was all that was presented.
The court could find only two cases that had a bearing on this issue. Dyersburg Machine Works, Inc. v. RentenbachEngineering Co., et al, 650 S.W.2d 378 (Tenn. 1983) and FarmlandIndustries Inc v. Frazier-Parrot Commodities, et al, 806 F.2d 848
(CA8, 1987). In Farmland Industries, the court refused to enforce a forum selection clause reasoning that the dispute did not arise out of the underlying agreement. That is not the case here.
The first count against Target is based on negligence, an alleged violation of a duty owed by Target to Total. But the dealership agreement between the parties is the basic source of any duty owed by Target to Total. In Coastal Steel v. TilghmanWheelabrator Ltd., et al, 709 F.2d 190, 203 (CA 3, 1983) referring to the forum selection clause, the court said "There is no evidence suggesting that the clause was not intended to apply to all claims growing out of the contractual relationship. If forum selection clauses are to be enforced as a matter of public policy, that same public policy requires that they not be defeated by artful pleading claims."[2] Thus, this case is CT Page 2849 distinguishable from the Farmland Industries where, as noted, the Court of Appeals in upholding the district court's refusal to enforce a forum selection clause held that the plaintiff Farmland's causes of action "do not all arise directly or indirectly from the agreement," 806 F.2d at page 852. In FarmlandIndustries more was involved than a dispute between the contracting parties and those associated with them. The district court in that case noted that an "elaborate scheme of fraud" was involved going beyond the contracting parties. The Court of Appeals noted that "Farmland could not have anticipated having to litigate these claims in Illinois," id p. 852 (Illinois was the selected forum under the agreement).
Here not only do all the claims against Target arise out of the dealer agreement which includes the forum selection clause. The court cannot even determine whether given the nature of the agreement Total knew or should have known that as to its Connecticut customers Target would have had to use SNET to provide them with the arrangements for long distance service with ATT or anyone else. If Total knew or should have known that it could have anticipated possible claims against SNET so how can it now ask that the forum selection clause not be enforced at Target's request since that will force Total to prosecute a separate suit against SNET in this forum? In Dyersburg, the plaintiff furnished materials to the principal debtor, a Kentucky subcontractor, McCarley Corporation, for a construction job in Kentucky. It was undisputed that McCarley still owed the plaintiff Dyersburg some $40,000. The defendant Rentenbach was engaged as the general contractor for the construction job. The defendant Firemen's Insurance Company as a surety executed a bond along with Retenbach as principal to the owner Extendicare of Kentucky conditioned to pay all claimants for all material reasonably required for the job. Dyersburg Machine Works sued the principal debtor, McCarley in a Tennessee court along with Retenbach and Firemen's Insurance Company. The Court below had dismissed the action against Retenbach and Fireman's Insurance on the basis of a forum selection clause in the labor and material bond that required that all suits on the bond be brought in a state or federal court in Kentucky where the construction job was situated. The Supreme Court of Tennessee reversed the court below and refused to dismiss the Tennessee action on two grounds. It reasoned Kentucky was a "substantially less convenient" forum than Tennessee to bring the action because of the location of witnesses. This court cannot agree with that position of the holding for reasons previously stated. But the court gave as a CT Page 2850 second ground the following reason at pp. 380-381:
 "In the instant case, we are of the opinion that the forum selection clause should not be enforced against the plaintiff for the following reasons. First, it is doubtful that the Kentucky forum required by the forum selection clause would afford to the plaintiff a complete remedy since it appears the Kentucky court would be unable to acquire jurisdiction over the principal debtor, the McCarley Corporation. The objective of modern procedure is to litigate all claims in one action if that is possible; in the instant case plaintiff should be permitted to bring his action in a jurisdiction in which he can litigate all his claims at once, the claim against the principal debtor as well as those against the obligors on the labor and material bond." (Emphasis added)
This court is somewhat confused by what in essence is the conclusory reasoning in Dyersburg Machine Works as reflected in the underlined language just quoted. The primary responsibility of courts in an economic regime such as ours is to enforce contractual agreements unless they are against public policy and the days are long past when forum selection clauses have been thought to be against public policy.
Obviously there will be inconvenience to Total but there is no indication that by proceeding in a New Jersey court against Target that Total could not receive substantial justice or will in effect be deprived of a remedy against Target. There is nothing to indicate depositions of SNET employees cannot also be used in any New Jersey proceedings against Target by either Target or Total. Mere inconvenience as previously noted won't do; the party resisting the forum selection clause must show it will be, in effect, deprived of a remedy. Midwest MechanicalContractors v. Tampa Constructors Inc, 659 F. Sup. 526, 531
(W.D.Mo., 1987), Dick Proctor Imports v. Sumitano Corp, supra at 486 F. Supp. Page 818-819, Green v. Clinic Masters Inc, 272 N.W.2d 813,816 (S.D., 1978), Full Sight Contact Lens v. Soft Lenses Inc,466 F. Sup. 71, 73 (SDNY, 1978), cf Bremen v. Zapata Offshore Co.,
407 U.S. at page 19. Also the court is not even completely aware of the detailed allegations of negligence against SNET thus it is CT Page 2851 not clear to the court how it can be said that if Total must proceed against Target in New Jersey, Total will be deprived of a remedy against SNET in our courts.
The point is "the party resisting enforcement of the (forum selection) clause bears a heavy burden in convincing the court that it should not be held to its bargain," Midwest MechanicalContractors v. Tampa Constructors, supra 659 F. Supp. at page 530, Weiss v. Columbia Pictures Television, supra at 801 F. Supp. At page 78, Bremen v. Zappata Offshore, 407 U.S. at page 18. The result may seem harsh but it is one imposed by the contents of the agreement between the parties. In fact such forum selection clause seem sensible if not even necessary if such an industry as one like this is to operate efficiently.
For the foregoing reasons, the Court will therefore grant Target's motion to dismiss.
CORRADINO, J.